UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) |

CAUSE NO. 3:05-MD-527 RM
(MDL-1700)

THIS DOCUMENT RELATES TO
ALL CASES

## OPINION AND ORDER

The discovery deadline for this case was January 31, 2007.  Near the end of that deadline, Defendant FedEx Ground Package System Inc. (Fedex) and Plaintiffs filed a flurry of discovery motions.  For the following reasons, Fedex's motion to compel teamsters information is **GRANTED IN PART** [Doc. No. 433], Plaintiffs' motion to quash is **GRANTED** [Doc. No. 471], Fedex's motion to compel the Griffin deposition is **GRANTED** [Doc. No. 486], and Fedex's motion to compel the production of a document used to refresh recollection is **GRANTED** [Doc. No. 488].

## I.    PROCEDURE

On August 10, 2005, this multidistrict litigation case was transferred to the Northern District of Indiana pursuant to 28 U.S.C. § 1407 to perform consolidated pretrial proceedings. Plaintiffs' main contention for many of their claims is that Fedex was treating them as independent contractors when they were actually employees.  As a result, Plaintiffs seek a number of remedies that revolve around this issue including injunctive relief and damages.  On November 15, 2005, this Court entered an initial scheduling order where, pursuant to the parties' consent, discovery on liability and damages was bifurcated.

The current disputes are discovery disputes.  On December 14, 2006, Fedex filed a motion to compel discovery regarding information related to the International Brotherhood of Teamsters (Teamsters).  On December 29, 2006, Plaintiffs filed their reply in opposition to Fedex's motion.  On January 16, 2007, Fedex filed a reply in support of its motion.

On January 16, 2007, Plaintiffs filed a motion to quash a subpoena.  Plaintiffs seek to stop Fedex from deposing several absent class members.  On February 5, 2007, Fedex filed its response in opposition to Plaintiffs' motion, and on February 12, 2007, Plaintiffs filed their response in support of their motion.

The final two discovery motions are motions to compel that were filed by Fedex on the same day, January 31, 2007, which also happened to be the discovery deadline.  In the first motion Fedex seeks to compel Plaintiffs to produce an unnamed plaintiff for a deposition.  However, that plaintiff was a named plaintiff at the time the motion was filed, and did not become an unnamed plaintiff until February 14, 2007.  In the second motion, Fedex seeks to compel Plaintiffs to produce a document used to refresh the recollection of two named plaintiffs during their respective depositions.

On February 2, 2007, this Court issued an order that accelerated the response and reply deadlines to the final two motions to compel in an attempt to preserve all future previously established deadlines.  As a result, Plaintiffs filed their responses in opposition to these motions on February 16, 2007, and Fedex filed its reply in support of its motions on February 21, 2007.

Because all these matters were fully ripe by February 21, 2007, this Court now enters its ruling on all these motions.  This Court may rule on these motions pursuant to its referral order and 28 U.S.C. § 636(b)(1)(A).

2

II.     ANALYSIS

A.     Legal Standards

Fed. R. Civ. P. 26 (b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party."  Relevant information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26 (b)(1).  For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. Daimler Chrysler, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978)). This Court has broad discretion when deciding whether to compel discovery and may deny discovery to protect a party from oppression or undue burden.  Fed. R. Civ. P. 26(c); Sattar v. Motorola, Inc., 138 F.3d 1164, 1171 (7th Cir. 1998) ("[D]istrict courts have broad discretion in matters related to discovery."); Gile v. United Airlines, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996) ("The district court exercises significant discretion in ruling on a motion to compel.").  In ruling on a motion to compel, "a district court should independently determine the proper course of discovery based upon the arguments of the parties." Id. at 496.

All of these motions deal with discovery regarding class certification.  Whether Plaintiffs should be permitted to proceed as a class is relevant to the subject matter of litigation, and as a result, it is a proper subject of discovery.  Plummer v. Chi. Journeyman Plumbers' Local Union No. 130, U.A., 77 F.R.D. 399, 403 (D.C. Ill. 1977).  A party can seek discovery regarding the Fed. R. Civ. P. 23(a) requirements, which includes whether the representative parties will fairly and adequately protect the interests of the class.  The considerations for adequacy of

representation are 1) whether the plaintiffs interests are not antagonistic to those of other members of the class that Plaintiffs represent, 2) that the representative has a sufficient interest in the outcome to ensure vigorous advocacy and 3) that the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. Fed. R. Civ. P. 23(a)(4); <u>Szabo v. Bridgeport Machines, Inc.</u>, 199 F.R.D. 280, 288-89 (N.D. Ind. 2001) (<u>rev'd on other grounds</u>) (citing <u>Sec'y of Labor v. Fitzsimmons</u>, 805 F.2d 682, 297 (7th Cir. 1986)). No party can fairly and adequately represent the interests of the absent class if that party is motivated by an adverse interest to the class as a whole. <u>Hansberry v. Lee</u> 311 U.S. 32, 45 (1940). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status, but unfortunately, where federal courts have found sufficient antagonism to defeat a claim of class representation is in many and varied contexts. 7A Charles Alan Wright, et al., <u>Federal Practice and Procedure: Civil 3d</u>, § 1768 (3d ed. 2005).

     B.    <u>Fedex's Motion to Compel Teamsters' Information</u>

     Fedex seeks discovery related to the relationship between Plaintiffs and the Teamsters. Teamsters members have distributed written materials at Fedex ground terminals, which feature both the Teamsters's anti-Fedex website and Plaintiffs' litigation website. The Teamster's website references the current pending litigation and encourages people associated with Fedex to send the Teamsters materials that will assist the litigation. <u>See</u> http://www.fedexwatch.com. Plaintiffs' litigation website also refers visitors to the Teamster's anti-Fedex website. <u>See</u> http://www.fedexdriverslawsuit.com.

     Fedex contends that this information indicates the Teamsters and Fedex are acting in concert. Fedex argues that the Teamsters are directing, at least in part, Plaintiffs how to run this

litigation for the sole benefit of the Teamsters.  Specifically, the Plaintiffs are seeking injunctive

relief and declaratory relief that will have the effect of changing Fedex drivers to "employees"

rather than "independent contractors" so that the Teamsters can increase their constituent base of

package delivery drivers.  Fedex contends that if Plaintiffs are being influenced by the

Teamsters, it would constitute an antagonistic interest to the rest of the class.  However, Fedex is

not sure of the extent of the Teamster's influence, and as a result, Fedex seeks to compel

production of documents and a response to an interrogatory that cover communications between

the Plaintiffs and the Teamsters.

Fedex must demonstrate that the information it seeks is relevant to be discoverable

pursuant to Fed. R. Civ. P. 26.  Fedex has established that the Teamsters and the Plaintiffs are

supporting each other to some extent based on the references to each other's website and that the

Teamsters distribution of written material at Fedex terminals.  While this evidence does not

prove that the Teamsters and Plaintiffs are acting in concert, it certainly suggests something

more than casual association between them.  If Plaintiffs are seeking relief specifically to benefit

the Teamsters or at the direction of the Teamsters, this Court cannot say discovery directed at

revealing the extent of the Teamster's influence would not be relevant.   Plaintiffs would be

primarily seeking to advance the interests of the Teamsters above the class.  If such an

agreement exists, it suggests collusion between the Plaintiffs and the Teamsters, and it would

potentially jeopardize the Plaintiffs' ability to litigate to the utmost on the class's behalf.  See

Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) ("[I]t is necessary to eliminate .

. . the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests

antagonistic to those of the remainder of the class."); Lirtzman v. Spiegel, Inc., 493 F. Supp.

1029, 1032 (D.C. Ill. 1980);cf DeLoach v. Phillip Morris Companies, Inc., 206 F.R.D. 551, 556

(M.D.N.C. 2002) (finding plaintiffs were adequate representatives but discussing a conflict of

interest as a relevant issue). See generally Hansberry, 311 U.S. at 45.  For example, if the absent

class desires a different form of relief, Plaintiffs may be compelled to pursue a different form of

relief at the behest of the Teamsters interest instead.   Simply put, if the Plaintiffs are subject to

extraneous influence by the Teamsters, there is potential to jeopardize Plaintiffs role as adequate

representatives.  See e.g. Kamean v. Local 363, International Brotherhood of Teamsters, 109

F.R.D. 391, 396 (S.D.N.Y. 1986) ("If . . . the class representatives are not motivated by the same

interests and concerns as the absent class members, then there is no assurance that the important

litigation decisions made will fairly and adequately vindicate the claims of the absent class

members who will be bound by them.").  Consequently, Fedex's request may lead to relevant

evidence on a pertinent class certification issue under Fed. R. Civ. P. 26(b).

　　　Plaintiffs contend that because the evidence Fedex has presented about the Teamsters

involvement would not be enough for the Plaintiffs not to be considered adequate representatives

at the class certification stage, Fedex's contention that the Teamsters are directing or influencing

the Plaintiffs is merely speculative or conjectural.  However, this argument is irrelevant at this

stage of the litigation.  While a possibility of a conflict would probably not render Plaintiffs'

inadequate representatives at class certification, a possibility of conflict is sufficient grounds for

purposes of discovery.  Unless, of course, the possibility is so speculative or remote that

discovery constitutes merely a "fishing expedition."  This Court has already determined that

Fedex has presented enough evidence that suggests the Plaintiffs and the Teamsters may be

acting in concert.  Consequently, if Plaintiffs can establish that union control or influence is

rarely or never grounds for disqualification under the adequate representation prong of Fed. R.

Civ. P. 23(a) when a court is actually making its class certification, then this Court could

determine that Fedex's concerns are far too speculative to warrant a need for the requested

discovery.[1]  See Eggleston, 657 F.2d at 904 ("[D]iscovery has limits and . . . these limits grow

more formidable as the showing of need decreases.").  However, Plaintiffs have failed to make

such a showing.

In an attempt to support their position, Plaintiffs cite to a variety of cases.  Most of these

cases do not stand for the proposition that union involvement is not relevant, but instead, these

cases indicate that there was not enough evidence to make a determination that a union was

influencing the lawsuit or pressuring the named Plaintiffs at the time the court was determining

whether class certification was appropriate.  See Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146-

48 (4th Cir. 1992) (indicating insufficient evidence to disqualify attorneys based on likely

conflict of interest with union); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 610 (C.D.

Cal. 2005) (indicating that Plaintiffs had failed to present any evidence that lawsuit was filed to

pressure a unionization); Coffin v. Bowater Inc., 228 F.R.D. 397, 405 (D. Me. 2005) (indicating

lack of evidence of union hostility so as to detrimentally affect the ability of the named Plaintiffs

to pursue action on behalf of class); Trull v. Dayco Products, LLC 214 F.R.D. 394, 404

(W.D.N.C. 2003) (indicating a lack of evidence to suggest that union is actually controlling

---

[1]Plaintiffs could also prevail if they were to assert some privilege or that the discovery
was some how inconsistent with Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  However, Plaintiffs make
no claims that the requested discovery is privileged,  unreasonably cumulative, or expensive.

litigation).[2]  At this time, this Court is not resolving whether or not Fedex has presented enough evidence to make a determination about the adequacy of Plaintiffs as representatives of a class. Instead, this Court's only concern is whether Fedex seeks discovery that may lead to relevant evidence regarding the adequacy of Plaintiffs as representatives.  The caselaw cited by Plaintiffs does not establish that influence by a union such as the Teamsters never or rarely constitutes an antagonistic interest.

Plaintiffs also argue that Fedex is not entitled to the discovery it requests because they have an ulterior motive for seeking that information.  Specifically, Fedex seeks information regarding the Teamsters to combat actions before the National Labor Relations Board (NLRB). Even though there have been a number of actions between Fedex and the Teamsters before the NLRB, this fact itself does not suggest that Fedex is seeking the discovery in this lawsuit to combat future actions.  Furthermore, the fact that Fedex has voiced its anit-union sentiment does not suggest Fedex is seeking discovery from the Plaintiffs for an improper purpose.  Fedex is a large corporation that spans throughout the country, and the Teamsters is a labor union that does likewise.  Naturally, there will be strife between these two organizations.  However, the

---

[2]The rest of the cases cited by Plaintiff also do not contradict Fedex's request.  Some of Plaintiffs cases stand for the proposition that union funding does not affect class certification. McClendon v. Continental Group, Inc., 113 F.R.D. 39, 43 (D.N.J. 1986) (indicating third party funding by a union for a class action does not in and of itself make the named plaintiffs antagonistic to the interests of the class).  Others are simply not applicable.  For example, in Sayre v. Abraham Lincoln Fed'l Saving & Loan Assn., 65 F.R.D. 379, 382 (E.D. Pa. 1974) the district court granted a protective order because the discovery sought would not constitute unethical conduct, which made it not relevant.  That case is inapposite to this situation because Fedex is not arguing that the alleged conflict with the Teamsters will disqualify Plaintiffs' counsel for unethical conduct, but rather because Plaintiffs would be pursuing this litigation for different motives.  Brown v. Dunbar & Sullivan Dredging Co., 8 F.R.D. 107 (D.C.N.Y. 1948) is also not applicable because the objection sustained by the court was analyzed under the Fair Labor Standards Act rather than the adequate representation prong of Fed. R. Civ. P. 23(a).

existence of that strife alone, absent some other showing, does not suggest that Fedex's current request is improper.  Based on the record before it, this Court cannot find Fedex is seeking this information to satisfy an ulterior motive.

Finally, Plaintiffs argue that Fedex's motion to compel was untimely because it was filed so near the close of discovery, and as a consequence, this Court should deny Fedex's request. While Fedex's motion to compel was filed late in discovery, this Court extended both the discovery deadline and the class briefing deadlines to alleviate time pressure concerns.  Even though Fedex's motion was filed late in discovery, this Court does not feel it is an "eleventh hour" filing so as to be denied under In re Sulfuric Acid Litigation, 231 F.R.D. 331, 332 (N.D. Ill. 2005).

While Fedex has shown this Court that information regarding communications between the Teamsters and the Plaintiffs is relevant, relevancy is not the only requirement to warrant disclosure pursuant to Fed. R. Civ. P. 26.  Fed. R. Civ. P. 26(b)(2)(C) provides in part:

> [t]he frequency or extent of use of the discovery methods . . . shall be limited by the court if it determines that . . . (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  The court may act upon its own initiative after reasonable notice.

Fedex's request for production seeks "[a]ny documents reflecting communications between plaintiffs or their counsel and the . . . Teamsters or any of its affiliates related to the lawsuits or Defendants." (Defendant's Exhibit A, Request No. 1).   Interrogatory No. 12 seeks to have Plaintiffs describe "all communications between the International Brotherhood of Teamsters or any of its affiliates and any law firm or lawyer representing plaintiffs regarding Fedex, including

the date of each such communication and the identity of the individuals involved." (Defendant's Exhibit B, Interrogatory No. 12). While Fedex has shown this Court that some communications regarding the Teamsters and the Plaintiffs may be relevant, this does not mean <u>all</u> communications are relevant. Fedex's requests are far too broad.

Fedex's requests are neither limited in terms of time nor are they limited to specific categories. First, Fedex does not request communications beginning on the date this lawsuit was filed, shortly before this lawsuit was filed, or even in the past five years. Second, Fedex's request is not properly limited to specific categories of information. This Court has found that communication between the Teamsters and the Plaintiffs regarding influence over this litigation or direction over this litigation is relevant, but Fedex's request reaches information well beyond these categories because Fedex requests <u>any</u> communication. Because there are no time limitations or categorical limitations, Fedex's requests will necessarily produce a large amount of discovery, some of which will not be relevant to the issues in this lawsuit.

The result of Fedex's request is far too broad and burdensome given the size of this litigation. Any benefit that Fedex would receive from this discovery would be far outweighed by the burden it would place upon Plaintiffs to not only produce the discovery, but to also find the relevant discovery. <u>See</u> <u>Sabratek Liquidating LLC v. KPMG LLP</u> 2002 WL 31520993 at 4 (N.D. Ill. 2002) (indicating discovery request will not be allowed where it potentially results in large scale production). Under Fed. R. Civ. P. 26, this Court may utilize its discretion to appropriately limit any discovery. <u>See</u> Fed. R. Civ. P. 26(b)(2)(C); <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 681 (7th Cir. 2002); <u>Metalex Corp. v. Uniden Corp. of America</u>, 863 F.2d

1331, 1336 (7th Cir. 1988).  Therefore, this Court will exercise its discretion and narrow Fedex's discovery request.

Having now concluded that communication between the Teamsters and Plaintiffs concerning this litigation is relevant, Fedex's motion to compel production and a response to an interrogatory is now limited to these topics.  Also, this Court will set a time limit of **3 months** prior to the date Plaintiffs filed their first complaint.  Fedex shall only be entitled to such communication that have taken place since this time.

In summary, Fedex has established that some of the communication between Plaintiffs and the Teamsters may be relevant for class certification.  However, Fedex's request is too broad to cover the respective categories of relevancy.  Consequently, Fedex's motion to compel is **GRANTED IN PART**.  Fedex is only entitled to documents that reflect communication between Plaintiffs and the Teamsters concerning this litigation.[3]

C.      Plaintiffs' Motion to Quash and Fedex's Motion to Compel a Deposition

On November 17, 2006, Fedex served document and deposition subpoenas to absent class members.  Each of the absent class members was once a named plaintiff in different pending class actions that are before this Court.  Plaintiffs move to quash the subpoenas served upon the now absent class members.

On January 31, 2007, Fedex filed a motion to compel the deposition of a named plaintiff.  However, that named plaintiff became, at best, and absent class member on February 14, 2007, when this Court granted a motion to amend the complaint that removed the Plaintiff in question

---

[3]Fedex's compelled response to its interrogatory is similarly limited to communication between the Plaintiffs' counsel and the Teamsters concerning this litigation.

as a named plaintiff.  Thus, in essence, Fedex's motion to compel deals with compelling the

deposition of another former named plaintiff.

    While absent class members are generally given a "free ride" under Fed. R. Civ. P. 23, in

appropriate cases absent class members may be required to submit to discovery requests.

Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999, 1005 (7th Cir. 1971).  Before

ordering such discovery, a court must be assured that the requested information is necessary for

trial preparation and that the discovery devices are not used to take unfair advantage of the

"absent" class members.  Id. at 1006.  Also, adequate notice must be given so that such persons

are fully informed of the discovery order and the possible consequences of noncompliance.  Id.

Furthermore, with regards to depositions of absent class members, the burden confronting the

party seeking the deposition testimony is more severe than if they were simply seeking

interrogatories.  Clark v. Universal Builders, Inc. 501 F.2d 324, 341 (7th Cir. 1974).

    First, Fedex argues that the Clark and Brennan standards do not apply.  Fedex argues that

the under Fed. R. Civ. P. 45(c)(3)(A)(iv), the subpoena may only be quashed under the present

circumstances if it presents an undue burden.  Fedex contends that because a class has not been

certified yet, the Clark and Brennan standards do not apply because that standard only deals with

post class certification discovery issues rather than pre certification issues.  This Court does not

agree.

    Even though a class has not been certified, the same principles that the 7th Circuit relied

upon in creating the more stringent standard under Clark and Brennan still apply.  Brennan

specifically enforced a stricter standard of discovery with absent class members to avoid the risk

that absent class members would not be misled or confused.  450 F.2d at 1005.  Furthermore,

both <u>Brennan</u> and <u>Clark</u> expressed concern that seeking discovery from absent class members

may be a tactic to take undue advantage of the class members or to reduce the number of

claimants.  <u>Id.</u>; <u>Clark</u>, 501 F.2d at 340.  Even though a class has not been certified, those same

fears from post class certification still apply during pre-certification.  A party that opposes a

future class certification may seek discovery from potential absent class members to take undue

advantage of them or to try and reduce the size of the class.  Furthermore, district courts in the

7th Circuit have applied the <u>Clark</u> and <u>Brennan</u> standard prior to class certification.  <u>See e.g.</u>

<u>Feldman v. Motorola, Inc.</u>, 1992 WL 415382 at 6 (N.D. Ill. 1992) (discussing discovery as it

relates to Fed. R. Civ. P. 23(a)(4) and named plaintiffs who became absent class members).

Therefore, this Court believes the higher standard imposed by <u>Clark</u> and <u>Brennan</u> is applicable.

Fedex seeks to depose three individuals, James Lester (Lester), Niles Pinkham (Pinkham),

Michael Griffin (Griffin).

       1.     <u>The depositions of Lester and Pinkham</u>[4]

     This Court is not persuaded that the depositions of Lester and Pinkham, as well as the

request for production of documents, is necessary for trial preparation.  Fedex contends that the

discovery will be relevant to the issues of commonality, typicality, and whether Plaintiffs

adequately represent the interests of the class.  While this Court agrees the discovery will

certainly be relevant to issues of class certification, <u>Brennan</u> requires that the discovery be

necessary.  Fedex has even stated that it can and will present evidence of non-Plaintiff

contractors to rebut Plaintiffs allegations.  Fedex has failed to articulate a need for the discovery.

---

[4]While Plaintiffs original motion indicated more unnamed Plaintiffs were at issue, Fedex
represented in its reply that these two individuals were the only two remaining at issue.

See Burlington N. Inc.v. Burlington N., Inc., 1980 WL 134 at 1 (N.D. Ill. 1980) ("The requisite inquiry is whether Burlington has manifested an actual need to obtain the information."(emphasis added)).   Fedex has failed to articulate any prejudice that will result if they are not to take the depositions.  At best, Fedex merely argues that the discovery is relevant and it will be helpful, and because it is relevant and helpful, they are entitled to the discovery. Mere relevance and helpfulness do not constitute a need, especially when Clark indicates that the burden is more severe when deposition testimony from absent class members is sought, such as in the present case.

Finally, this Court notes that the parties are on the eve of beginning class certification briefing.  Allowing more depositions at this point in the litigation may threaten the class certification deadlines.  These timing concerns also are a consideration for this Court to require Fedex to make a stronger showing of need for the depositions and documents they seek from absent class members.  The Plaintiffs motion to quash the subpoenas of putative class members is **GRANTED**.  However, the situation of Griffin, the other absent class member who Fedex wishes to depose, is different than Lester and Pinkham.

2.        The deposition of Griffin

This Court is persuaded that the deposition of Griffin is necessary for trial preparation. The uniqueness of Griffin's particular situation satisfies the Clark and Brennan standard.  Griffin was involved in this litigation as a named plaintiff for over two years and he was suddenly dropped because the parties learned that Griffin did not have any employment relationship with Fedex.  Despite this fact, he submitted prior discovery that was nearly identical to other named plaintiffs.  As a consequence, Griffin's situation and how he went from being a named plaintiff

14

with claims common and typical of other named plaintiffs to the antithesis is unique.  Griffin is the only plaintiff that Fedex is aware of that has this type of situation, which is a person who believes he has an employment relationship with Fedex but actually does not have such a relationship.  As a result, Griffin's deposition may be Fedex's only opportunity to obtain the information regarding such a situation.  Fedex has shown a sufficient need for Griffine's deposition.

The timing and circumstances of Griffin's involvement in this litigation also warrants production of Griffin for a deposition.  Unlike Lester and Pinkahm, Griffin was a named plaintiff at the time discovery closed.  As a named Plaintiff, Griffin would have undoubtedly been forced to attend a deposition.  In fact, Griffin was scheduled for a deposition that Fedex was prepared to conduct that was cancelled at the direction of Plaintiffs' counsel because Griffin was going to be dropped as a named plaintiff.  Plaintiffs did not move to drop Griffin till the day after the close of discovery, and he did not become an unnamed Plaintiff till two weeks after discovery closed. Now, Plaintiffs argue that <u>Brennan</u> and <u>Clark</u> prevents Fedex from deposing Griffin because he is, at best, an absent class member.  Plaintiffs appear to have deliberately changed Griffin's circumstances so as to hide behind the <u>Brennan</u> and <u>Clark</u> standards.  Also, if Griffin's situation is so drastically different in that he never had an employment relationship with Fedex, he may not even be an absent class member in this case, which completely alleviates the concerns from <u>Brennan</u> and <u>Clark</u>.  While Griffin is not a named plaintiff, the circumstances also support this Court's finding that Griffin's deposition should go forward.

Finally, this Court notes that Fedex does not appear to be seeking the testimony of Griffin to harass absent class members, nor does the deposition Fedex seeks appear to be burdensome.

15

Seeking the deposition of one absent class member, who may not even be a class member, from potentially thousands hardly constitutes harassment.  Furthermore, performing one deposition, which was already supposed to have been performed, cannot be considered a burden.  Fedex's motion to compel the deposition of Griffin is **GRANTED**.

Plaintiffs in response argue that any communications that will be the subject of Griffin's deposition will be protected by the attorney client privilege.  However, Plaintiffs do not claim that the attorney-client privilege prevents Fedex from deposing Griffin, instead Plaintiffs forecast that some of the questions Fedex may ask Griffin come under the purview of the attorney-client privilege.  This Court, at this time, can only speculate whether the attorney-client privilege will block some or all of Fedex's questioning because this Court does not know the substance or context of the questioning.  Essentially, any dispute as to the applicability of the attorney client privilege is not ripe before this Court.  As a consequence, this Court will not rule on Plaintiffs' argument regarding the attorney-client privilege at this time.

In summary, Fedex has failed to articulate a need for the depositions of Lester and Pinkham.  As a result, the motion to quash is **GRANTED**.  However, the facts and circumstances of Griffin's situation warrant that he be produced for deposition.  Consequently, the motion to compel the deposition of Griffin is **GRANTED**.

   D.   Fedex's Motion to Compel a Document Used to Refresh Deponent Recollection

On December 12, 2006, Fedex took the depositions of two named Plaintiffs, Dale Fluegel (Fluegel) and Clarence Kelley (Kelley).  At the beginning of each deposition, the deponents appeared to be reviewing certain documents in their possession.  Both deponents indicated to Fedex that they had reviewed the documents prior to the commencement of the deposition to

16

refresh their recollection.  However, Plaintiffs agreed to turn over some of the documents, but they refused to turn over one document on the basis that it was protected by the work product privilege.

Generally, the work product doctrine shields materials a party prepares in anticipation of litigation.  Mattenson v. Baxter, 438 F.3d 763, 767-68 (7th Cir. 2006).  Fed. R. Civ. P. 26(b)(3) provides that materials that contain mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation are out of bounds and are only discoverable if the seeking party shows a substantial need and is unable to obtain the materials or their substantial equivalent without undue hardship.  Fed. R. Civ. P. 26(b)(3); Mattenson, 438 F.3d at 768.

Plaintiffs claim the work product privilege applies to a single document, which constitutes a 19 page deposition preparation guide for use by Plaintiffs' counsel in preparing named Plaintiffs for their depositions.  (Affidavit of Lynn Rossman Faris ¶ 2).  The document contains litigation strategy and was never intended to be used by clients or named plaintiffs. (Id.).  Based on the representation of Plaintiffs' counsel, which constitutes an oath by an officer of this Court, and the absence of contrary evidence, this Court finds that the disputed document is valid work product.  See also Timm v. Mead Corp., 1992 WL 32280 at 5 (N.D. Ill. 1992) (indicating materials presented by an attorney to a deponent prior to deposition is opinion work product).  However, this does not conclude the analysis.  Fedex argues that the document be produced because when Plaintiffs counsel gave the deponents the document to refresh recollection at the depositions, it constituted a waiver of the work product privilege.

F.R.E. 612 provides in part,

17

> [I]f a witness uses a writing to refresh memory for the purpose of testifying, either—
>> (1) while testifying, or
>> (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine . . . and to introduce in evidence.[5]

Use of documents to refresh recollection can even constitute the waiver of a privilege such as work product. <u>Cf</u>. <u>Wheeling-Pittsburgh Steel Corp. v. Underwriters Lab.s, Inc.</u>, 81 F.R.D. 8, 10-11 (D.C. Ill. 1978). However, "access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony." <u>Id</u>. at 11. To determine whether those writings indeed have an impact, <u>Sporck v. Peil</u>, 759 F.2d 312 (3d. Cir. 1985) announces a three part test: 1) the witness must use the writing to refresh his memory, 2) the witness must use the writing for the purpose of testifying and 3) the court must determine that production is necessary in the interest of justice. <u>Id</u>. at 317.[6]

---

[5] F.R.E. 612 is applicable to depositions pursuant to Fed. R. Civ. P. 30(c), which states "examination and cross-examination may proceed as permitted at the trial under the Federal Rules of Evidence." <u>See</u> <u>Stone Container Corp. v. Arkwright Mut. Ins. Co.</u>, 1995 WL 88902 at 2 (N.D. Ill. 1995).

[6] The parties do not appear to dispute that <u>Sporck</u> is applicable. Fedex contends that <u>Sporck</u> is factually distinguishable, but it does not argue that <u>Sporck</u>'s legal test is at odds with the law of the 7th Circuit. This Court is not aware of any 7th Circuit case that either endorses or prohibits the analysis used by the <u>Sporck</u> court. However, other district courts in the 7th Circuit have applied the reasoning of <u>Sporck</u> in similar discovery disputes. <u>See e.g.</u> <u>Stone Container Corp. v. Arkwright Mut. Ins. Co.</u>, 1995 WL 88902 at 3-4 (N.D. Ill. 1995); <u>C&F Packing Co. v. IBP, Inc.</u>, 1997 WL 619848 at 5 (N.D. Ill. 1997). Furthermore, the reasoning of <u>Sporck</u>'s test is sound because it simply incorporates the requirements of F.R.E. 612. Specifically, prongs one and two ensure that this Court find that the witness actually used the document(s) in dispute to refresh his recollection for the purposes of testifying. The third prong simply reiterates the F.R.E. 612 (2) language that this Court utilize its discretion. Consequently, because district courts in the 7th Circuit have adopted <u>Sporck</u>, because the 7th Circuit is silent with regards to <u>Sporck</u>, and because this Court finds the analytical test set out by <u>Sporck</u> to be sound and reasonable, this Court will apply <u>Sporck</u>.

The testimony of Kelley unequivocally shows that Kelley specifically used the 19 page

legal document to refresh his recollection.  Kelley went through several documents in a folder

prior to the deposition.  Fedex counsel observed Kelly doing this and the relevant portions of

Kelley's testimony followed:

> Q:    And what exactly are the documents that you have in that folder?
> A:    Okay.  I hate to tell you I don't remember.  But some of them are my
>     relationship with FedEx and my complaints.
> Q:    Okay.  You can open them up and go through them.  What's the first
>     document that you hand to counsel?
>     Ms. Norman:   This is work product that we prepared.
>   By Mr. Jirgal
> Q:    Okay.  And that's something that you reviewed in preparation for this
>     deposition?
> A:    Today.
> Q:    Okay.  And did that - - you testified that helps refresh your recollection - -
> A.    Yes.

(Defendant's Motion to Compel Memorandum Used to Refresh the Recollection, Ex. A,

Deposition of Kelley 8-10).  Plaintiffs' counsel indicates that the first document, which is the

one in question, is work product, but then Kelley specifically says that he used it to refresh his

recollection.  Therefore, as to prong 1 of <u>Sporck</u>, Kelley admitted that it refreshed his

recollection.  As to prong 2 of <u>Sporck</u>, because Kelley unequivocally stated he used the

document to refresh his recollection, this Court can only assume what Kelley's answer provides,

that he used the document for the purposes of testifying and that it had an impact upon his

testimony.

This situation is not like <u>Timms</u> where the deponent indicated he merely glanced at some

of the documents to refresh his recollection.  In that case, the court could not determine whether

the deponent used the documents for his testimony because of the cryptic nature of his answers. That is not the situation in the present case.  When asked if he used the 19 page legal document to refresh his recollection, Kelley answered an unambiguous "yes."  This Court finds that such an answer clearly establishes Kelley used the documents for his testimony.  No further questioning was required by Fedex's counsel.

This Court also finds that it is in the interest of justice for Plaintiffs to surrender the document.  The Plaintiffs only need to produce one document, which will be neither burdensome nor time consuming.  Thus, this Court cannot say Fedex is engaging in "wholesale exploration of plaintiffs files" because they are only seeking one document.  See Wheeling-Pittsburgh Steel Corp., 81. F.R.D. at 11.  Furthermore, if the document holds the opinions and mental impressions of the attorney rather than any factual assertions by the witnesses as Plaintiffs represent, then the document is likely to contain little in the way of facts or admissible evidence for impeachment purposes against the witness.  Timms, 1992 WL 32280 at 6.  "Client's opinions of appropriate strategies to follow in litigation will most likely not be admissible in the first place."  Id. Essentially, Plaintiffs will have nothing to worry about.  But if it contains such facts or admissible evidence, then F.R.E. 612 demands that Fedex be allowed to have access to and use of this document.  See Wheeling-Pittsburgh Steel Corp., 81. F.R.D. at 11 ("Under Rule 612 an adverse party is entitled to production of a writing used for refreshing one's recollection . . . so that the may search out any discrepancies between the writing and the testimony.").  Consequently, the interests of justice warrant disclosure of the document.

In summary, because the deponent testified specifically and unequivocally that he used the 19 page legal document to refresh his recollection and because disclosure is in the interests of

justice, F.R.E. 612 warrants disclosure of the document.  Fedex's motion to compel the production of the document used to refresh recollection is **GRANTED**.

**III.    CONCLUSION**

For the reasons stated, Fedex's motion to compel teamsters information is **GRANTED IN PART** [Doc. No. 433], Plaintiffs' motion to quash is **GRANTED** [Doc. No. 471], Fedex's motion to compel the Griffin deposition is **GRANTED** [Doc. No. 486], and Fedex's motion to compel the production of a document used to refresh recollection is **GRANTED** [Doc. No. 488].

**SO ORDERED.**

Dated this 5th Day of March, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge