UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| _____ )<br>In re FEDEX GROUND PACKAGE )<br>SYSTEM, INC. EMPLOYMENT )<br>PRACTICES LITIGATION )<br>----------------------------------------------- )<br>THIS DOCUMENT RELATES TO: )<br> )<br>3:05-cv-529 (*Fluegel* - Illinois) )<br>3:06-cv-393(*Carlson* - Montana) )<br>3:05-cv-531 (*Sheehan* - Massachusetts) )<br>3:05-cv-539 (*Bunger* - South Dakota) )<br>3:07-cv-478 (*Flores* - Colorado) )<br>3:07-cv-322 (*Magno* - Connecticut) )<br>3:07-cv-412 (*Gruhn* - Vermont) )<br>3:05-cv-541 (*Gregory* - Virginia) )<br>3:06-cv-337 (*Gray* - Missouri) )<br>_____ ) | CAUSE NO. 3:05-MD-527 RM<br>(MDL-1700) |

OPINION AND ORDER

The court, in its March 2010 order (doc. # 2018), denied the Michigan plaintiffs' motion to amend class certification order. The court examined the evidence submitted in support of the Michigan plaintiffs' summary judgment motion and in light of that state's emphasis on actual control, decided that the liability issues aren't subject to class-wide proof, but instead require individualized and fact intensive determinations. The court instructed the parties that had filed briefs on motions to amend class certification on the ground addressed in the Michigan order to file a supplemental statement indicating how their position differs from the Michigan plaintiffs' position. The plaintiffs and

FedEx have filed their supplemental statements, and for the reasons stated below, the court denies the plaintiffs' motions.

I<small>LLINOIS</small>

The named Illinois plaintiffs have asserted claims for violations arising under the Illinois Wage Act, 820 I<small>LL.</small> C<small>OMP.</small> S<small>TAT.</small> 115/1, *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 I<small>LL.</small> C<small>OMP.</small> S<small>TAT.</small> 505/1, *et seq.*, and claims for rescission, declaratory judgment, and injunctive relief. The plaintiffs ask the court to reconsider its class certification denial based on arguments and evidence presented in their summary judgment motion. The plaintiffs contend the court can decide these claims by common evidence and that any individualized evidence offered by FedEx won't change the court's determination of employment status.

The Illinois plaintiffs' claims relying on the state's common law definition of employee require the court to determine not only right to control, but also actual exercise of control. "Common-law factors to consider in examining a worker's potential status as an employee include 'the amount of control and supervision, the right of discharge, the method of payment, the skill required in the work to be done, the source of tools, material or equipment, and the work schedule.' Of these, control of the manner in which work is done is considered the most important." Mitchell v. Department of Corr., 856 N.E.2d 593, 598 (Ill. App. Ct. 2006) (internal citations omitted). This court found that Illinois law contemplates "that even when

the 'employment' agreement vests enough control in the hiring party to create an employment relationship, the inquiry still must extend into the parties' extracontractual relationship." Doc. # 1119, p. 142.

In the Michigan order denying reconsideration of class certification, the court held that a determination of FedEx's actual exercise of control required the court to review individualized evidence, so questions of law or fact common to the members of the class don't predominate over questions affecting only individual members. The plaintiffs acknowledge that the court's Michigan order applies to their common law claims, and on that ground, Illinois plaintiffs' position doesn't differ materially from the Michigan plaintiffs' position. For the reasons stated in the Michigan order, the court denies the plaintiffs' request to reconsider class certification as to the Illinois plaintiffs' common law claims.

As this court explained when denying class certification, the Illinois Wage Act contains its own definition of employee. Doc. # 1119, p. 139. That Act provides that "any individual permitted to work by an employer in an occupation" is an employee, and then creates an exemption to the Act's coverage for any person who is free — both under the contract and in practice — from control and direction over the work's performance, whose work is performed either outside the employer's usual course of business or outside the employer's places of business, and who is in an independently established business. 820 ILL. COMP. STAT. 115/2. This three-prong test is known as the "ABC test". Each element of the exemption must be present for the service provider to be an independent contractor for

purpose of the Wage Act. <u>Novakovic v. Samutin</u>, 820 N.E.2d 967, 973 (Ill. App. Ct. 2004); <u>Byung Moo Soh v. Target Mktg. Sys., Inc.</u>, 817 N.E.2d 1105, 1109 (Ill. App. Ct. 2004). Because the putative employer must demonstrate the exemption's applicability, the Wage Act creates a near-presumption that a worker is an employee rather than an independent contractor. *See* <u>Adams v. Catrambone</u>, 359 F.3d 858, 864 (7th Cir. 2004). This same three-part test is also found in the Illinois Unemployment Insurance Act, 820 Ill. Comp. Stat. 405/212. Illinois courts rely on interpretations of the test under the Unemployment Insurance Act to guide their application of the Wage Act exemption. *See e.g.*, <u>Novakovic v. Samutin</u>, 820 N.E.2d at 974.

This court ruled that because the Wage Act places the burden on FedEx to establish that all three prongs of the ABC test are met, FedEx must be given a chance to rebut the presumption by presenting both common and individualized evidence. For example, to establish that its drivers are independent contractors, FedEx will be required to prove its drivers' freedom from control, not only under the Operating Agreement, but also "in fact." In addressing a similar test under Massachusetts law, the court noted that "FedEx Ground will need to prove freedom from control in practice, as well as freedom from control under the Operating Agreement." Doc. 1119, p. 60. The Massachusetts plaintiffs argued that freedom in fact need never be reached because FedEx won't be able to carry its burden of showing freedom from control under the Operating Agreement, making the plaintiffs employees. The court responded, "Perhaps so, but this is not the

time for decision on the merits." Doc. # 1119, p. 60. This court further noted that the facts needed to rebut the presumption "include the nature of the hired party's business or profession, which is unlikely to be determined by the contract itself." Doc. # 1119, p. 143. Accordingly, the court ruled that Illinois law "poses questions upon which FedEx Ground must be allowed to present driver-by-driver evidence." Doc. # 1119, p. 143.

The plaintiffs ask the court to reconsider its denial of class certification because the fully briefed Illinois summary judgment motion establishes that all three prongs of the ABC test can be determined by reference to common evidence. FedEx can't meet the second prong of the test, the plaintiffs argue, because common evidence shows that the drivers' work is a regular part of FedEx's business and material parts of the drivers' work occur within FedEx's terminals and the geographic area in which FedEx conducts business. As to the third factor, the plaintiffs argue that common evidence shows the Illinois plaintiffs wouldn't be able to operate a delivery business without dependency upon FedEx, so FedEx can't show that the drivers have independently established businesses. The plaintiffs further contend that even if the court were to find it necessary to examine the first prong of the test, common evidence demonstrates that FedEx reserved the right to control the drivers' work, making is unnecessary to examine actual control. Accordingly, the plaintiffs conclude that FedEx hasn't offered any individualized evidence that can possibly rebut the presumption of employee status.

At the time of class certification, the court couldn't say whether the question of employment status under the Wage Act could be decided based on common evidence because FedEx needed to be given the opportunity to present individualized evidence to rebut the presumption. To prove the drivers were independent contractors, FedEx must show that it didn't retain the right to control and didn't actually exercise control. *See* <u>Carpetland U.S.A., Inc. v. Illinois Dep't of Employment Security</u>, 776 N.E.2d 166, 180-185 (Ill. 2002) (listing twenty-five factors to examine whether direction or control exists under same test used for Unemployment Insurance Act). A determination that FedEx would be unable to rebut the right to control, making FedEx's exercise of actual control irrelevant, would have been a decision on the merits. *See* <u>Carpetland v. Illinois Dep't of Employment Sec.</u>, 776 N.E.2d at 179 ("'Direction or control' . . . means that an employing unit has the right to control and direct the worker, not only as to the work to be done but also how it should be done, whether or not that control is exercised." (citation omitted)).

The third factor applies when "the individual has a proprietary interest in the business which he can sell, give away, or operate without any hindrance from any other party." <u>Novakovic v. Samutin</u>, 820 N.E.2d at 975 (*citing* 56 Ill. Adm. Code § 2732.200(e) (2001)). This inquiry "requires that the individual's entrepreneurial enterprise must enjoy a degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services." <u>Carpetland v. Illinois Dep't of Employment Sec.</u>, 776

N.E.2d at 190 (internal quotations and citations omitted). The court in <u>AFM Messenger Serv., Inc. v. Department of Employment Sec.</u>, 763 N.E.2d 272, 285 (Ill. 2002), held that AFM delivery drivers weren't independent contractors because the evidence didn't demonstrate they were able to operate their "delivery businesses" without the benefit of a relationship with AFM or another messenger service company like AFM. <u>Id.</u> Courts have also examined thirteen factors relevant to the determination of this inquiry. <u>Carpetland v. Illinois Dep't of Employment Sec.</u>, 776 N.E.2d at 190; *see also* <u>Novakovic v. Samutin</u>, 820 N.E.2d at 975. These thirteen factors and some of the facts taken into consideration in <u>AFM Messenger Serv.</u> and <u>Carpetland</u> require that FedEx be given the opportunity to present individualized evidence to rebut the independent business factor.

Even though the second prong of the ABC test can be decided on common evidence, a determination that FedEx can't rebut this prong of the test, obviating the need to determine the other two elements, would be a decision on the merits, which is improper at the class certification stage. This court acknowledges that in <u>De Giovanni v. Jani-King Int'l, Inc.</u>, 262 F.R.D. 71, 84-85 (D. Mass. 2009), the court addressed this same test under Massachusetts law and found that all three factors could be analyzed based on common evidence and did so without addressing the merits of the plaintiffs' claim. But this court isn't similarly convinced that in this case review of the three-prong test can be limited to common evidence, at least not without effectively determining the merits of the plaintiffs' claim.

A class certification decision isn't tied to the merits of the claim. *See* <u>Szabo</u> <u>v. Bridgeport Mach., Inc.</u>, 249 F.3d 672, 677 (7th Cir. 2001) ("The success of [Rule 23] depends on making a definitive class certification decision before deciding the case on the merits, and on judicial willingness to certify classes that have weak claims as well as strong ones."). "A court may not say something like 'let's resolve the merits first and worry about the class later.'" <u>Id.</u> The court can, though, look beneath the surface of a complaint to determine whether the Rule 23 factors are met. <u>Id.</u> When the question of suitability for class treatment overlaps with a question related to the merits, the district judge "must make a preliminary inquiry into the merits." <u>Id.</u> (finding that when deciding whether to grant class certification, the district court wasn't required to accept the allegations in the complaint as true, but rather had to make whatever factual and legal inquiries as necessary to ensure that the requirements for class certification were satisfied, even if underlying considerations overlapped with the merits of the case); *see also* <u>American Honda Motor Co., Inc. v. Allen</u>, 600 F.3d 813, 816-817 (7th Cir. 2010) (finding the district court should have concluded <u>Daubert</u> analysis of expert to determine appropriateness of class certification where the expert's testimony was necessary to show whether plaintiffs' claims were capable of resolution on a class-wide basis).

The "'preliminary inquiry into the merits' discussed in <u>Szabo</u> is a . . . limited one, that has at its focus not the substantive strength or weakness of the plaintiffs' claims but rather the merits of those allegations that bear on the

suitability of a case for class treatment under Rule 23(a) and (b)." <u>Rahim v. Sheahan</u>, No. 99-C-0395, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001).

Ruling on the merits before deciding class certification also would run afoul of the rule against one-way intervention. This "rule bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment." <u>Amati v. City of Woodstock</u>, 176 F.3d 952, 957 (7th Cir. 1999). "Rule 23(c) prohibits this practice . . . by requiring the district judge to make an early determination whether the suit is to proceed as a class action." <u>Id.</u> "[T]reatment of plaintiffs and defendants is supposed to be symmetric, which is possible only if a class is certified (or not) before decision on the merits." <u>Bertrand ex rel. Bertrand v. Maram</u>, 495 F.3d 452, 455 (7th Cir. 2007). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." <u>Bickel v. Sheriff of Whitley County</u>, Cause No. 1:08-CV-102-TS, 2010 WL 883654, at *3 (N.D. Ind. Mar. 5, 2010) (<i>citing</i> FED. R. CIV. P. 23(c), Advisory Notes to 2003 Amendments).

The plaintiffs have asked that this court certify the class and then wait for the opt-out period to expire before ruling on their summary judgment motion. But deciding whether the plaintiffs can succeed on any one of the elements in the ABC test by presenting common evidence, rendering the remaining two elements irrelevant, effectively decides the merits of the claim. The court declines to

reconsider class certification based on a merits determination at the summary judgment stage.

The court won't delay this matter further. The summary judgment motions are ripe and the named plaintiffs in the Illinois litigation (as well as FedEx) are entitled to a ruling on their claims without additional delay. Accordingly, while the court of appeals has recognized that in certain situations it might be appropriate to rule on a summary judgment motion before ruling on a class motion, <u>Chavez v. Illinois State Police</u>, 251 F.3d 612, 629-630 (7th Cir. 2001), such circumstances don't exist here. The court therefore DENIES the Illinois plaintiffs' motion to amend the class certification order (doc. # 1339).

MONTANA

The Montana plaintiffs ask the court to amend its class certification order pursuant to Rule 23(c)(1)(C) (doc. # 1340) based on the arguments and evidence presented in the plaintiffs' motion for summary judgment. The plaintiffs contend employment status can be resolved by common evidence and that any individualized evidence offered by FedEx will not change the court's determination. As this court explained when denying class certification, "Montana law places a burden of proof on the party claiming an independent contractor relationship to prove both prongs of what the Montana courts call the "AB test"". Doc. # 1119, p. 18. The AB test requires FedEx to show that the hired party "(i) . . . has been and will continue to be free from control or direction over the performance of the

10

person's own services, both under a contract and in fact; and (ii) . . . is engaged in an independently established trade, occupation, profession, or business . . . ." MONT. CODE ANN. § 39-71-417(4)(a). Under this AB test, the party claiming an independent contractor relationship must show not only that no contract vested the hiring party with the right to control the details of the contracted work, but also that the hiring party did not in fact control the details of the contracted work. *See e.g.,* Walling v. Hardy Constr., 807 P.2d 1335 (Mont. 1991). The hired party "must be free from the control of his employer, under his contract and in fact, in the performance of his services." Sharp v. Horner Waldorf Corp., 584 P.2d 1289, 1301 (Mont. 1978).

This court denied class certification because to establish that its drivers are independent contractors, FedEx will be required to prove its drivers' freedom from control, not only under the Operating Agreement, but also "in fact." FedEx needed to be given the opportunity to present individualized evidence to rebut the presumption of employee status. This court explained:

> If the Montana plaintiffs are correct about the import of the control reserved to FedEx Ground under the Operating Agreement, it will be unnecessary to look beyond the Operating Agreement. But if the Montana plaintiffs are incorrect, FedEx Ground is entitled to an opportunity to meet the rest of its burden under the "AB test" by proving that it didn't control the details of the drivers' work sufficiently.

Doc. # 1119, p. 19. In the event the analysis reached the actual control issue, the court stated that "[s]omething very close to a driver-by-driver analysis will be needed." Doc. 1119, p. 19. This court found that even though "the effect of the

Operating Agreement is a question common to the entire proposed class, that question does not predominate over the remaining issues under Montana law." Doc. # 1119, pp. 19-20.

The plaintiffs request the court to reconsider its denial of class certification because, they argue, the fully briefed summary judgment motion in Montana establishes that both prongs of the AB test can be determined by reference to common evidence. Essentially, the plaintiffs contend that the common evidence set forth in their summary judgment brief shows that prong B is established, making analysis of prong A unnecessary. Even if prong B isn't met, the plaintiffs argue that common evidence establishes that prong A is met because FedEx has reserved the right to control in the Operating Agreement and commonly applicable policies, making it unnecessary to determine whether FedEx exercised actual control. Finally, even if the court must consider actual exercise of control, the plaintiffs argue that they have shown that actual control can be established with common proof.

The Montana plaintiffs' arguments are similar to those raised and rejected in Illinois and Michigan and for the reasons stated above and in the Michigan order (doc. # 2018), the court DENIES the Montana plaintiffs' motion to amend (doc. # 1340).


MASSACHUSETTS

Similar to Illinois, Massachusetts uses the "ABC test" to determine whether workers are employees or independent contractors. Under the Massachusetts ABC test, as in Illinois, the alleged employer has the burden of proving independent contractor status by showing that all three prongs of the ABC test are met. The Massachusetts plaintiffs ask the court to reconsider its denial of class certification after reviewing their summary judgment motion because, they contend, the facts relevant to this determination don't vary from driver to driver. The plaintiffs argue that a review of the common evidence presented by the parties establishes that FedEx can't establish any of the prongs in the ABC test and any individualized evidence offered by FedEx is irrelevant.

Massachusetts' ABC test requires the putative employer to prove three things:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service [and in fact]; and
>
> (2) the service is performed outside the usual course of business of the employer [or is performed outside of all places of business of the enterprise]; and
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

MASS. GEN. LAWS ch. 149, § 148B(a)(1-3). The "in fact" language in (1) was added as part of the 2004 amendments. The bracketed phrase in (3) was deleted as part of the 2004 amendments. This court denied the Massachusetts plaintiffs' motion for class certification because under the Massachusetts ABC test, FedEx has the

burden to prove all three elements of the test; "[o]f necessity, then, FedEx Ground will be required to prove its drivers' freedom from control, not only under the drivers' contract, but also 'in fact.'" Doc. # 1119, p. 60. The court explained that "[w]hether the Operating Agreement vests too much control in FedEx Ground is a common question, but is just one of several." Doc. # 1119, p. 61. Although freedom from actual control might not need to be decided if FedEx can't carry its burden of showing freedom from control under the Operating Agreement, the court reasoned that "this is not the time for decision on the merits." Doc. # 1119, p. 60. The plaintiffs contend that a time for a decision on the merits has now come because the undisputed facts presented in support of their motion for summary judgment shows that FedEx presents no individualized evidence that can rebut employment status.

The plaintiffs' arguments to amend this court's denial of class certification mimic those set forth and rejected in Illinois and for the reasons already explained, the court DENIES the Massachusetts plaintiffs' motion to amend (doc. # 1341).

SOUTH DAKOTA

Like Montana, South Dakota sets forth an "AB test" to distinguish employees from independent contractors. This two-part test requires that the worker be free, both under any contract and in fact, from control or direction over how the services are performed and be customarily engaged in an independently

established trade, occupation, profession, or business. Egemo v. Flores, 470 N.W.2d 817, 821-822 (S.D. 1991). This court held that the independent business factor can't be resolved on a class-wide basis, but requires individualized evidence. Doc. # 1119, p. 1113. At the class certification stage, the court couldn't determine that the plaintiffs would succeed on the right to control, thereby obviating FedEx's need to show freedom from actual control or that the drivers are engaged in an independently established business.

The South Dakota plaintiffs argue that since the court's order denying class certification, they have had an opportunity to develop fully and brief the facts relevant to the test for employment status. They contend that the undisputed facts submitted in support of summary judgment show conclusively that FedEx can't meet its burden under either prong of the AB test. According to the plaintiffs, common evidence shows that FedEx retains the right to control its drivers, so the court needn't address whether FedEx exercised actual control or whether the drivers are customarily engaged in an independently established business. Even if the court must look to the second prong of the test, the plaintiffs say that this can be established by common evidence because FedEx drivers have no relationship with an economic enterprise that is independent of the relationship they have with FedEx. Finally, the South Dakota plaintiffs argue that even if the court must determine whether FedEx actually controlled the drivers, the summary judgment record shows that FedEx's actual exercise of control can be established by common evidence.

As already explained, the plaintiffs essentially ask this court to make a merits determination before deciding class certification. If the court determines that FedEx cannot show freedom from control under the Operating Agreement, a merits determination in the plaintiffs' favor would result. If the court decides that FedEx cannot show that the drivers were independently established businesses, a merits determination for the plaintiffs would result. The court declines to make such a determination for purposes of deciding suitability of class certification. Further, after reviewing the parties' summary judgment briefing, the court finds that a determination of whether FedEx actually exercises control over its drivers requires individualized evaluations. Accordingly, for the same reasons set forth in the Illinois and Michigan rulings, the court DENIES the South Dakota plaintiffs' motion to amend (doc. # 1342).

COLORADO

Colorado also uses an "AB test" to determine employment status under the Colorado Wage Act. Colorado Revised Statute § 8-4-101(4) creates a presumption that one who performs services for another is an employee. Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office, 859 P.2d 278, 281 (Colo. Ct. App. 1993). To overcome this presumption, the principal must prove that (1) the worker is free from the principal's control under the agency agreement and in fact, and (2) the worker is customarily engaged in [an independent] trade or business

related to the service performed. <u>Speedy Messenger Delivery Servs. v. Industrial Claim Appeals Office</u>, 129 P.3d 1094, 1096 (Colo. Ct. App. 2005).

This court denied class certification noting that "[a]s under Massachusetts law . . ., Colorado law places a burden of proof on FedEx that the plaintiffs see as insurmountable." Doc. # 1770, p. 6. This court noted that FedEx might even bear a higher burden to prove employment status in Colorado because, "as the plaintiffs understand it, [Colorado law] will require FedEx to prove that it doesn't command when, where, and how much labor or services shall be performed." Doc. # 1770, p. 6. This court reasoned: "The Colorado plaintiffs might be right that FedEx won't be able to manage such a showing, but the court can't decide that issue at this stage of the proceedings." Doc. # 1770, p. 6. The court instead focused on what would happen if FedEx makes that showing — "which would result in two additional hurdles for FedEx, both of which would require proof outside the Operating Agreement and commonly applicable policies." Doc. # 1770, p. 6. FedEx needs to be given the opportunity, the court explained, to present individualized evidence to prove that the drivers are free from control in fact and whether a driver is (or was) customarily engaged in an independent business related to the drivers' work for FedEx.

Summary adjudication of this issue is now fully briefed and the Colorado plaintiffs contend their briefing shows that FedEx can't meet either prong of the Colorado AB test. The plaintiffs maintain that because the Colorado plaintiffs didn't engage in a meaningful, sustained, related business venture at the time

17

they delivered packages for FedEx, there is no individualized proof that FedEx could offer to rebut prong two of the test. Further, even if FedEx could show this prong, the plaintiffs claim the court can decide that FedEx has retained the right to control based on common evidence, making an evaluation of actual control unnecessary. Finally, even if FedEx might rebut the right to control and show that the drivers are independently established businesses, the plaintiffs say the common evidence in the summary judgment record establishes that FedEx has exercised actual control.

The court isn't convinced that the independently established business factor can be determined based on common evidence alone. Even if it could be, the court can't determine that FedEx will be unable to show this prong or rebut the right to control, obviating the need to demonstrate lack of control in fact. The court declines to make a merits determination for purposes of class certification, so, at this stage, the court assumes that FedEx will need to present individualized evidence to show that it didn't exercise actual control to rebut the presumption of employment. Further, after reviewing the Colorado parties' summary judgment briefs, the court finds a determination of whether FedEx exercised actual control over its drivers requires individualized evaluations. Accordingly, for the same reasons set forth in the Illinois and Michigan rulings, the court DENIES the Colorado plaintiffs' motion to amend (doc. # 1855).

CONNECTICUT

18

The Connecticut plaintiffs ground their motion to amend on that state's "ABC test," which test is applicable to the plaintiffs' claims under the state's minimum wage act, CONN. GEN. STAT. §§ 31-71a through 31-71i. Under Connecticut's ABC test, the putative employer must prove that (a) the hired party has been and will continue to be free from the principal's control and direction in the performance of duties, both under the contract and in fact; (b) the service is performed either outside the usual course of the principal's business or outside all the principal's places of business; and (c) the hired party is customarily engaged in an independently established trade occupation, profession, or business of a sort that is involved in the service provided. Tianti v. William Raveis Real Estate, Inc., 651 A.2d 1286, 1290 n.8 (Conn. 1995).

The court denied the Connecticut plaintiffs' motion for class certification because "FedEx will have to prove much more than simply lack of contractual control, including lack of control in fact and the nature of each driver's customary work." Doc. # 1770, p. 9. Again, while "[t]he plaintiffs might be correct that FedEx can't prove lack of control under the contract, and so will fail in its ultimate burden of proof, . . . the plaintiffs may be wrong." Doc. # 1770, p. 9. The court concluded: "Today is not, however, the occasion to evaluate the sufficiency of FedEx's ultimate proof." Doc. # 1770, p. 9.

The Connecticut plaintiffs have fully briefed the merits of the employment status and ask the court to review their filings to find that the ABC test can be determined by reference to common proof. This is so, the plaintiffs contend,

because the undisputed facts show conclusively that FedEx can't meet its burden on a single factor under the ABC test, so individualized evidence isn't implicated. The class certification phase, however, is to take place before a merits determination, not at the same time. A determination that FedEx can't rebut one or more prongs of the ABC test is a determination on the merits. For the reasons already discussed, the court declines the plaintiffs' request to make such a determination for purposes of evaluating the appropriateness of class certification. The court therefore DENIES the Connecticut plaintiffs' motion to amend the class certification order (doc. # 1861).

VERMONT

The Vermont plaintiffs requested class certification on their claim that FedEx violated the Vermont Independent Contractor Law, VT. STAT. ANN. tit. 21, §§ 341, 601(3), and the Vermont Wage Laws, VT. STAT. ANN. tit. 21, §§ 342. They also sought class certification on their common law claims of rescission, unjust enrichment, and quantum merit. The statutory claims are grounded on Vermont's ABC test. The parties agree that under the ABC test, FedEx has the burden to establish that the drivers are not employees. VT. STAT. ANN. tit. 21, § 341. FedEx must prove:

> (1) the individual has been and will continue to be free from control or direction over the performance of such services, both under the contract of services and in fact; and

(2) the service is either outside all the usual course of business for which such service is performed, or outside all the places of business of the enterprise for which such service is performed; and

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business.

VT. STAT. ANN. tit. 21, § 341(1-3). This court explained in its denial of class certification that "[a]s with Massachusetts, Illinois, and Colorado, Vermont law places burdens on FedEx to prove things that cannot all be determined simply by examination of the Operating Agreement and common applicable policies." Doc. # 1770, p. 78. To succeed, "FedEx must prove that each driver was free from control or direction over the performance of the driver's services in fact as well as under the contract, and that each driver is customarily engaged in an independently established calling." Doc. # 1770, p. 78. The Vermont plaintiffs argued that "FedEx will fail because it can't prove the drivers' freedom from control or direction under the Operating Agreement," but the court informed the parties that "this is not the stage of proceedings to decide that issue." Doc. # 1770, p. 78. The Vermont plaintiffs' arguments to amend the court's class certification order of their statutory claims already has been addressed in this opinion, and the court denies the Vermont plaintiffs' request for those reasons.

The plaintiffs also assert that the court should amend class certification as to their claims for rescission, unjust enrichment, and quantum merit. The court didn't specifically address the plaintiffs' common law claims in its order denying class certification. The plaintiffs argue that these claims are governed by the right

to control test, so they can be decided based on common evidence. As FedEx points out, though, these claims are grounded in part on the plaintiffs' statutory claims that rely on the ABC test. The court addressed a similar argument when denying class certification in Colorado, explaining that when plaintiffs' primary claim is a statutory cause of action for wage deductions, plaintiffs' claims for rescission and declaratory and injunctive relief flow from the same standard and should similarly be denied certification. Doc. # 1770, p. 7. The court stated: "The Colorado plaintiffs' remaining claims flow from the contention that the Operating Agreement's description of the drivers as independent contractors is, given the Agreement's other terms, false or against public policy. Given the centrality of the Wage Act claim to those arguments, the same analysis applies." Doc. # 1770, p. 7. In this case, too, the Vermont plaintiffs' claims for rescission, unjust enrichment, and quantum merit are based in part on their statutory claims. Because the statutory claims rest on application of the ABC test, the court declines to certify the plaintiffs' non-statutory claims. The court therefore DENIES the plaintiffs' motion to amend the court's denial of class certification (doc. # 1866).

VIRGINIA

The Virginia plaintiffs ask the court to amend its order denying class certification based on their claim that their summary judgment briefing shows that employment status can be determined from contractual documents or

employment manuals alone. The plaintiffs explain that "[w]hile this Court found that some Virginia cases analyze 'extra-contractual evidence', the record now offers common proof of FXG's power to implement its contractual rights.'" Doc. 2043, p. 2. Each of the specific facts noted by the court in its certification order, the plaintiffs argue, is now shown using common evidence applicable to all Virginia drivers. The Virginia plaintiffs contend that the court's analysis should differ from the analysis in its order denying the Michigan plaintiffs' motion to amend class certification because the determinative inquiry in Virginia is the "power of control" and in Michigan the analysis turns on "the realities of the work performed" and "control is but one factor." Unlike in Michigan, the plaintiffs say the Virginia control test can be conclusively determined through the undisputed evidence of FedEx's policies and procedures, systematic practices, the Operating Agreement, and the admissions of FedEx's executives and managers.

While the Virginia courts look at four factors to resolve employment issues, "(1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual," the "fourth factor, the power of control, is determinative." Atkinson v. Sachno, 541 S.E.2d 902, 905 (Va. 2001) (citing Hadeed v. Medic-24, Ltd., 377 S.E.2d 589, 594-595 (Va. 1989)).

In denying class certification, this court reviewed several Virginia cases in which the contract wasn't dispositive. Doc. # 1119, pp. 134-135. This court noted that in Richmond Newspapers, Inc. v. Gill, 294 S.E.2d 840, 845 (Va. 1982), even though the contract was indicative of the newspaper's power to control the result

sought to be accomplished, the court concluded that the circumstances surrounding the parties' actual conduct revealed that the newspaper exercised virtually no control over the means and methods employed by the route carrier . The court in Atkinson v. Sachno stated that "[i]t is only by consideration of all the facts pertaining to the relationship in any case, including provisions of the contract, the actual conduct of the parties, and the conditions of the business in which they are engaged, that it can be determined whether the [individual] is endowed with that control over his own methods and means of doing work which is the test of an independent contractor." 541 S.E.2d at 906. The Virginia Supreme Court recently reiterated "that there are abundant tests and criteria that can be used to determine whether the relationship between the individual and [the alleged employer] is that of an independent contractor or an employee." Ogunde v. Prison Health Servs., Inc., 645 S.E.2d 520, 523 (Va. 2007) (citing Atkinson v. Sachno, 541 S.E.2d at 905)).

This court concluded that "[w]hile a determination of employment status could be made solely on the basis of the standard Operating Agreement, Virginia law requires a driver-by-driver examination in light of the circumstances of the particular case — an examination that cannot be resolved on a class-wide basis." Doc. # 1991, p. 135. The court explained that "[u]nder the Virginia standard, FedEx Ground must be allowed to present evidence of who sets the drivers' schedules, ownership of equipment, and so on, which may necessitate the use of extrinsic evidence." Doc. # 1991, p. 136. Class certification was improper, the

court ruled, because the right to control drivers' work doesn't predominate over other questions affecting members of the class within the meaning of Rule 23(b)(3). Doc. # 1991, p. 136.

In their motion to amend, the plaintiffs first contend that it is the "right to control" and not actual control that is determinative under Virginia law. This same argument was raised and addressed in connection with the plaintiffs' motion for class certification. A party seeking reconsideration can't simply rehash previously rejected arguments. Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir.1996). As this court previously found, FedEx must be given the opportunity to present individualized evidence to show it didn't assert control over the drivers' work.

The Virginia plaintiffs' arguments for amending class certification don't differ materially from the arguments addressed and rejected in Michigan. The court has reviewed the parties' summary judgment briefs and finds that employment status can't be resolved by examining only common evidence. The plaintiffs present significant evidence that tends to show FedEx's supervision over all Virginia drivers' means and methods of carrying out their work, but before the court can decide employee status of the proposed putative class members, the court must examine the individual circumstances of those class members. FedEx's actual exercise of control might vary from driver to driver, and the court can't determine based on the evidence presented by the plaintiffs that all the class members should be treated alike. Similar individualized issues noted in the

Michigan order will be pertinent to a determination of whether Virginia drivers are employees or independent contractors. Accordingly, for the same reasons addressed in the Michigan order (doc. # 2018), the court DENIES the Virginia plaintiffs' motion to amend the class certification order (doc. # 1333).

MISSOURI

The Missouri plaintiffs sought class certification of their statutory claim for unauthorized wage deductions, MO. REV. STAT. § 290.010, their common law claims for rescission and unjust enrichment, and their claim for declaratory relief. The court denied class certification, finding that even though it appears that the right to control determines whether one is an employee or independent contractor, the concept of the "right to control" is more intricate in Missouri than most other states. Doc. # 1991, p. 104. The court ruled that whether the "right to control" exists in Missouri requires consideration of the following eight factors:

> The factors to consider in determining whether or not the requisite right to control exists are: "(1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract."

Doc. # 1991, p. 104 (*quoting* Leach v. Board of Police Comm'rs, 118 S.W.3d 646, 649 (Mo. Ct. App. 2003)).

This court noted that in Nunn v. C.C. Midwest, 151 S.W.3d 388, 400-402 (Mo. Ct. App. 2004), a written contract established a right to control, but the court

26

analyzed each of the eight factors, including actual exercise of control. Doc. # 1119, p. 105. And, "despite having found both a contractual right to control and the actual exercise of control — which would end the inquiry in most states — the court went on to evaluate the remaining factors." Id. This court held that because Missouri defines the "right to control" with reference to the actual exercise of control, Leach v. Board of Police Comm'rs, 118 S.W.3d at 649, requiring a driver-by-driver, terminal-by-terminal, supervisor-by-supervisor analysis that is unnecessary in most other states, class certification was improper. Doc. # 1119, pp. 105-106.

The Missouri plaintiffs say they have now demonstrated in their motion for summary judgment that FedEx not only reserves the right to control, but routinely exercises control throughout its network of Missouri drivers. The Missouri plaintiffs also point to a recent Eighth Circuit case, Huggins v. FedEx Ground Package Sys., Inc., 592 F.3d 853, 858 (8th Cir. 2010), in which the court used the Restatement (Second) of Agency to determine employment status, noting that the "right to control" was the "touchstone" for determining employment status. Id. The plaintiffs argue that in Huggins v. FedEx, the court relied primarily on the parties' agreement in holding that a reasonable jury could find that FedEx retained the right to control the method and means of the driver's work, and similar common evidence in this case shows that the plaintiffs are employees.

In Huggins v. FedEx, the issue was whether the plaintiff, who was riding with Esteban Gutierrez, a driver of a FedEx line haul truck, could recover against

FedEx for injuries sustained in a car accident under respondeat superior liability. The court noted that "[t]he 'principal factors' that Missouri courts routinely consider in determining whether one acting for another is an employee or an independent contractor for purposes of respondeat superior liability are set out in § 220(2) of the Restatement (Second) of Agency." 592 F.3d at 858 (*citing* Lee v. Pulitzer Pub. Co., 81 S.W.3d 625, 631 (Mo. Ct. App. 2002) (respondeat superior); Johnson v. Pacific Intermountain Exp. Co., 662 S.W.2d 237, 242 n.9 (respondeat superior); Dean v. Young, 396 S.W.2d 549, 553 (Mo. 1965) (respondeat superior)). The court explained that the first consideration is "the extent of control which, by the [relevant] agreement, the master may exercise over the details of the work." 592 F.3d at 858. This is the touchstone for determining whether a master-servant relationship exists. Id.

FedEx moved for summary judgment in Huggins, arguing that the relevant contract at issue — the "Linehaul Contractor Operating Agreement" — established that FedEx didn't retain a right to control the "means and methods" of the contractor's work. 592 F.3d at 858. The district agreed, reasoning that the contract supported the conclusion that Mr. Gutierrez was an independent contractor as a matter of law. The appellate court reversed after examining the agreement and determining that FedEx retained the right to control at least some of the "means and methods" of the work. Id. at 859. In concluding that a reasonable jury could find that FedEx had a right to control Mr. Gutierrez's performance and was his employer for respondeat superior purposes, the court

of appeals focused on FedEx's retained right to control in the contract and other evidence offered by Mr. Huggins that supported an employment relationship. Id. at 861.

The plaintiffs point to the court's decision in Huggins v. FedEx to argue that the applicable test is the Restatement (Second) of Agency and the employment determination can be made based on a review of the contract alone. But, in their motion to amend class certification, the plaintiffs argued that "[a]bsent an applicable statutory definition in the wage statute, the term 'employee' is defined, for purposes of the wage-protection statutes, according to the common-law 'right to control' test." Doc. # 577-2, pp. 6-7 (footnote omitted); see also Doc. 747, pp. 2-3. The applicable test, according to the Missouri plaintiffs, was the eight factor test set forth in Phillips v. Par Elec. Contractors, 92 S.W.3d 278, 282 (Mo. Ct. App. 2002) (workers' compensation), and Leach v. Board of Police Comm'rs, 118 S.W.3d 646, 649 (Mo. Ct. App. 2003) (worker's compensation). Doc. # 577-2, p. 7. FedEx and this court agreed.

The plaintiffs now contend that the applicable test for their statutory wage claim is the Restatement test based on the holding in Huggins v. FedEx. But Huggins didn't address MO. REV. STAT. § 290.010; it addressed a respondeat superior claim. Missouri courts have consistently held that the Restatement test applies to claims based on respondeat superior, see Lee v. Pulitzer Pub., 81 S.W.3d at 631; Johnson v. Pacific Intermountain Exp., 662 S.W.2d at 242 n.9; and Dean v. Young, 396 S.W.2d at 553, so it's unclear why the plaintiffs make this

argument for the first time in their motion to amend class certification. In any event, the eight factor test is the appropriate test for analyzing the plaintiffs' statutory wage claim, even though the cases utilizing that test have involved workers' compensation.

Further, Huggins v. FedEx doesn't stand for the proposition that evidence of the putative employer's exercise of actual control is irrelevant when the right to control can be established by the contract. In Huggins, FedEx moved for summary judgment, arguing that the contract established an independent contractor relationship. The court disagreed and held that a reasonable jury could find that through the line haul agreement FedEx retained at least some right to control the means and methods of the contractor's work, making summary judgment inappropriate. Unlike this case, the Huggins plaintiff didn't move for summary judgment and FedEx didn't present evidence of lack of actual exercise of control to defeat summary judgment. It therefore wasn't necessary for the Huggins court to determine whether lack of actual control is relevant in determining employment status.

As this court previously determined, Missouri defines the "right to control" with reference to the actual exercise of control. Similar to its reasoning in the Michigan order (doc. # 2018), this court holds, after reviewing the Missouri plaintiffs' motion for summary judgment and supporting evidence, the issue of actual control will require a driver-by-driver analysis and cannot be determined

based on common evidence alone. The court therefore DENIES the Missouri plaintiffs' motion to amend the class certification order (doc. # 1326).

CONCLUSION

For the foregoing reasons, the court DENIES the plaintiffs' motions to amend the court's denial of the class certification orders [Doc. nos. 1326, 1333, 1339, 1340, 1341, 1342, 1855, 1861, 1866].

SO ORDERED.

ENTERED:    May 19, 2010

   /s/ Robert L. Miller, Jr.
Judge, United States District Court
Northern District of Indiana