UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

MAY   9 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

BRADLEY D. GREGORY, et al.,

      Plaintiffs,

v.                              Case No. 2:10cv630

FEDEX GROUND PACKAGE SYSTEM, INC.,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant FedEx Ground Package System, Inc.'s ("FXG") Motion to Dismiss Plaintiffs' Sixth Amended Complaint ("12(b)(6) Motion to Dismiss"), ECF No. 290,[1] and Motion to Dismiss the Non-Norfolk Plaintiffs for Misjoinder, or, in the Alternative, to Sever and Transfer ("Motion to Dismiss or Sever and Transfer"), ECF No. 294, have been referred to the undersigned United States Magistrate Judge by orders of reference issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF Nos. 302, 306. After the parties fully briefed each motion, the Court held a hearing on April 10, 2012, at 9:30 a.m. Robert McFarland, Esq., and Jeffry Nestler, Esq., appeared and argued on behalf of FXG and Anthony L. Marchetti, Jr., Esq., appeared and argued on behalf of Plaintiffs. Sharon Borden was the official court reporter.

---

[1] For ease of reference, this Order cites documents in the record exclusively by ECF number.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The instant action has been pending in various iterations and courts since 2003. Plaintiffs' central contention is that FXG misclassified them as "independent contractors," which has resulted in FXG's unjust enrichment and deprived Plaintiffs of certain financial benefits to which they would have been entitled had they been properly classified as employees. The motions presently before the Court aim to dismiss claims and parties identified in Plaintiffs' Sixth Amended Complaint.

The ten plaintiffs in this case are all residents of Virginia who formerly worked for FXG as package pick-up and delivery drivers at FXG terminals throughout the State. ECF No. 288 ¶¶ 1-10. Plaintiff Gregory worked at FXG's terminal located in Norfolk, Virginia, which is in the Norfolk Division of the Eastern District of Virginia.[2] ECF No. 288 ¶ 1. Plaintiffs Taylor, Howell, and Jackson ("Fredericksburg Plaintiffs") worked out of Fredericksburg, Virginia, which is in the Alexandria Division of the Eastern District of Virginia. ECF No. 288 ¶¶ 2-3, 5. Plaintiffs Bowman, Pryor, and Willis ("Richmond Plaintiffs") worked out of Richmond, Virginia, which is in the Richmond Division of the Eastern District

---

[2] There is some conflict in the record over the cities in which Plaintiffs worked. This conflict is irrelevant for the purposes of the instant motion, so the Court relies on the cities listed in Exhibit A attached to the Declaration of Robert W. McFarland, which FXG submitted in support of its Motion to Dismiss or Sever and Transfer. ECF No. 296 attach. 1.

of Virginia. ECF No. 288 ¶¶ 4, 8, 9. Plaintiffs Perdue, Powell, and Wittmeier worked out of Roanoke, Virginia, which is in the Roanoke Division of the Western District of Virginia. ECF No. 288 ¶¶ 6-7, 10.

Plaintiff Bradley D. Gregory first filed a putative class action complaint in this Court against FXG in 2003. Complaint, Gregory v. FedEx Corp., 2:03-cv-00479 (E.D. Va. July 3, 2003), ECF No. 1. In September 2005, the Judicial Panel on Multidistrict Litigation transferred the case from this Court to MDL 1700 in the Northern District of Indiana for coordinated pretrial proceedings with dozens of other cases arising from FXG's classification of its drivers. MDL Order, Gregory, 2:03-cv-00479 (E.D. Va. September 12, 2005), ECF No. 62. In February 2006, Plaintiffs Taylor and Howell joined the suit. ECF No. 223 attach. 10. In March 2008, the MDL court denied Plaintiffs' motion for class certification, ECF No. 109; however it granted their subsequent motion to add named Virginia plaintiffs. ECF No. 253 attach. 1. In September 2008, Plaintiffs filed a Fifth Amended Complaint, adding Jackson, Bowman, Pryor, Willis, Purdue, Powell, and Wittmeier as named Plaintiffs. ECF No. 256 attach. 5. On October 20, 2008, FXG filed an answer to Plaintiffs' Fifth Amended Complaint. ECF No. 256 attach. 9. In September 2010, the MDL court entered an order remanding the case to this Court. ECF No. 189.

Upon remand, Defendants filed a Motion to Dismiss the Non-Norfolk Plaintiffs' Claims for Misjoinder, ECF No. 269, and a Motion to Sever and Transfer the Non-Norfolk Plaintiffs' Claims, ECF No. 272.[3] On its own motion, the Court ordered Plaintiffs to file a Sixth Amended Complaint setting forth the bases for the Court's subject matter jurisdiction and eliminating superfluous class action verbiage. ECF No. 287. The Court also directed Plaintiffs to set forth all causes of action they intend to plead in the Sixth Amended Complaint, and it granted FXG leave to file responsive pleadings or advise the Court if it intended to rely on pleadings already filed. ECF No. 287.

Plaintiffs filed the Sixth Amended Complaint on December 13, 2011. ECF No. 288. It contains four counts and asserts federal question, diversity, and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367. Count one is entitled "Fraud" and alleges that FXG, through the Operating Agreement ("OA") that Plaintiffs signed and pre-employment communications, knowingly and fraudulently misrepresented that Plaintiffs were "independent contractors" when, in fact, they were employees. ECF No. 288 ¶¶ 68-79. Count two is entitled "Rescission of Operating Agreement" and asserts that the OA is void as against public policy and an unconscionable contract of adhesion. ECF No. 288 ¶¶ 81-85. It further alleges that FXG was unjustly enriched as a consequence of

---

[3] These motions are substantially identical.

its conduct and that Plaintiffs are entitled to the quantum meruit value of their services as employees. ECF No. 288 ¶¶ 90-91. Count three is entitled "FLSA Wage and Hour/Overtime Violations" and asserts that FXG intentionally failed to pay Plaintiffs for time worked over forty hours in a given week and failed to pay Plaintiffs wages for time spent loading and unloading vehicles in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as amended. ECF No. 288 ¶¶ 94-99. Count four is entitled "Declaratory Relief Against Defendant." It alleges that an actual controversy exists between the Plaintiffs and FXG concerning (1) whether FXG misclassified Plaintiffs as "independent contractors;" (2) whether FXG failed to pay Plaintiffs wages and benefits during Plaintiffs relationship with FXG; (3) the amount of compensation, benefits, and interest to which Plaintiffs are entitled; and (4) the amount of statutory damages to which Plaintiffs are entitled. ECF No. 288 ¶ 102. It asks the Court to enter declaratory judgment in Plaintiffs' favor on these matters. ECF No. 288 ¶ 103.

In response to Plaintiffs' Sixth Amended Complaint, FXG filed a 12(b)(6) Motion to Dismiss. ECF No. 290. The same motion asks that Plaintiffs FLSA claims be struck under Rule 12(f). FXG also filed a Motion to Dismiss or Sever and Transfer. ECF No. 294. On February 6, 2012, the Court denied the motions to dismiss or sever

and transfer for misjoinder that FXG filed in response to Plaintiffs' Fifth Amended Complaint as moot. ECF No. 297.

For the reasons stated herein, the undersigned RECOMMENDS that (1) Defendant's 12(b)(6) Motion to Dismiss be GRANTED IN PART and DENIED IN PART; (2) Defendant's request to strike Plaintiffs' FLSA claims under rule 12(f) be DENIED; and (3) Defendant's Motion to Dismiss or Sever and Transfer be GRANTED IN PART and DENIED IN PART.

## II.  **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

In examining the sufficiency of a complaint under Rule 12(b)(6), the Court "begin[s] by taking note of the elements a plaintiff must plead to state a claim" for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947 (2009). The Court must "accept the facts alleged in [the] complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Md. Court of Appeals, 626 F.3d 187, 188 (4th Cir. 2010). Nevertheless, threadbare "legal conclusion[s] . . . [are] not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Ultimately, the complaint must state sufficient facts from which the Court can infer the plausibility rather than the mere possibility that the defendant is liable for the alleged misconduct. Id. at 1949; Coleman, 626 F.3d at 190; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009); see Fed. R. Civ. P. 12(b)(6).

## A.   Whether Plaintiffs' Fraud, Rescission, and FLSA Overtime Claims are Time-Barred

FXG argues that Plaintiffs' fraud,[4] rescission, and FLSA overtime claims must be dismissed under Rule 12(b)(6) because they are time-barred.[5] A statute of limitations defense is an affirmative defense and, as such, may only be dealt with in a 12(b)(6) motion where "all facts necessary to the [] defense 'clearly appear[ ] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

The instant case is not one of the rare circumstances in which facts sufficient to rule on a statute of limitations defense appear on the face of the complaint. Id. To determine whether Plaintiffs'

---

[4] FXG does not seek to dismiss Plaintiff Taylor's fraud claim. ECF No. 290.

[5] In Virginia, actions for fraud accrue "when the fraud is discovered or by the exercise of due diligence reasonably should have been discovered . . . ," Va. Code § 8.01-249(1), and a plaintiff must bring the claim within two years of accrual, Va. Code § 8.01-243(A). Similarly, a party who fails to take prompt action after learning of facts constituting grounds for rescission waives its right to rescind the contract. See McLeskey v. Ocean Park Investors Ltd., 405 S.E.2d 846, 848 (Va. 1991). A plaintiff must bring FLSA claims within two years, but the limitations period is three years if the plaintiff can show that the defendant's violation of the statute was willful. 29 U.S.C. § 255(a); McLaughlin v. Richland Shoe, 486 U.S. 128, 133, 135 (1988) (explaining that the plaintiff bears the burden of proof on the issue of whether a violation was willful). A new cause of action accrues each time the employer issues a paycheck in violation of the FLSA. See Nealon v. Stone, 958 F.2d 584, 591 (4th Cir. 1992). Plaintiffs allege that FXG willfully violated the FLSA. ECF No. 288 ¶ 99.

timely asserted their fraud, rescission, and FLSA overtime claims, the Court must have some idea as to the dates on which material events giving rise to these claims occurred. Yet the Sixth Amended Complaint contains no dates whatsoever.[6] In its supporting memorandum, FXG provides the date that each plaintiff purportedly executed the OA and the date that each plaintiff's relationship with FXG supposedly terminated. ECF No. 291 at 7, 19.[7] FXG also provided these dates in its Answer to Plaintiffs' Fifth Amended Complaint. ECF No. 256-9 ¶¶ 1-10.

Although courts may consider facts outside the four corners of the complaint on a 12(b)(6) motion without converting the motion to one for summary judgment, Gasner v. Cnty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995), the dates FXG has propounded in its

---

[6] Plaintiffs' failure to include such relevant dates renders their fraud claim in count one deficient under Federal Rule of Civil Procedure 9(b), but it does not provide a basis for dismissing the claim on statute of limitations grounds. The Fourth Circuit has held that fraud claims must "at a minimum, describe the time, place, and contents of the false representations . . . ." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008); see Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic, Inc., 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (applying requirements to fraud claim brought under Virginia law). Plaintiffs are advised that failure to cure this deficiency in any future amended complaint could result in dismissal of the claim with prejudice. See Walters v. McMahen, 795 F. Supp. 2d 350, 360 (D. Md. 2011).

[7] FXG argues that the date of contract execution for each plaintiff is the only date pertinent to determining when they discovered the fraud and whether they acted promptly to rescind the contract. ECF No. 291 at 5. It argues that the date of contract termination is the outside date for determining whether plaintiffs brought their FLSA claims within two years of the last offending paycheck. ECF No. 291 at 18.

supporting memorandum are outside the scope of matters the Court may consider on a 12(b)(6) motion to dismiss, see Norfolk S. Ry. Co. v. Shulimson Bros. Co., 1 F. Supp. 2d 553, 555 n.1 (W.D.N.C. 1998) (explaining that the "information concerning dates of death and administration of estates was provided by the Defendants in their briefs supporting the motions to dismiss but was not contained within the allegations of the complaint," but considering the information nevertheless because the dates were matters of public record).

The general rule in the Fourth Circuit is that a court, in weighing the sufficiency of a complaint, must consider facts contained in documents incorporated by reference or attached to the complaint. See, e.g., HQM, Ltd. v. Hatfield, 71 F. Supp. 2d 500, 502 (D. Md. 1999); Kline v. Nationsbank of Va., N.A., 886 F. Supp. 1285, 1294 (E.D. Va. 1995). Authority also recognizes that a court may consider matters of public record and facts capable of judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); In re MicroStrategy, Inc. Securities Litig., 115 F. Supp. 2d 620, 623 n.4 (E.D. Va. 2000). Some decisions intimate that facts in the record of the case may also be considered, Norfolk Fed'n of Buss. Dists. v. H.U.D., 103 F.3d 119 (table), 1996 WL 671293 *1 (4th Cir. 1996) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1988)); Anheuser-Busch, Inc., v. Schmoke, 63 F.3d 1305 (4th Cir.

1995) (same) <u>vacated on other grounds</u>, 517 U.S. 1206 (1996), but it does not appear that courts in the Fourth Circuit citing this principle have actually applied it, <u>see e.g.</u>, <u>Clark v. BASF Salaried Employees' Pension Plan</u>, 329 F. Supp. 2d 694 (W.D.N.C. 2004) (considering matters of public record); <u>Norfolk S. Ry. Co.</u>, 1 F. Supp. 2d at 555 n.1 (explaining that the dates of defendants' deaths were matters of public record, so the court could consider them); <u>Moore v. Flagstar Bank</u>, 6 F. Supp. 2d 496, 500 n.4, 501 (E.D. Va. 1997) (converting 12(b)(6) motion to motion for summary judgment because parties filed affidavits and supplemental materials for consideration). Under these rules, the Court cannot consider the dates that dates that FXG has propounded.

First, although Plaintiffs' Sixth Amended Complaint references the OA and its contents, neither Plaintiffs nor FXG has provided the OA that each Plaintiff executed as evidence of the date of execution. Moreover, no document referenced in the Sixth Amended Complaint would provide the dates of termination. Second, the dates FXG propounds are not matters of public record or of which the court is willing to take judicial notice. <u>See</u> Fed. R. Evid. 201. Third, although the dates do appear in FXG's response to the Fifth Amended Complaint, the Sixth Amended Complaint superseded Plaintiffs' prior pleadings, so it would be improper for the Court to look to FXG's Answer to the Fifth Amended Complaint for factual

content.[8] See <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 572 (4th Cir. 2001).

The Court can find no authority supporting FXG's contention that the dates asserted in its Answer to the Fifth Amended Complaint, though technically part of the record of this case, may be considered for purposes of the instant 12(b)(6) motion. A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the complaint; importantly it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). In light of this purpose and the fact that FXG bears the burden of raising the statute of limitations defense, <u>see</u> <u>John R. Sand & Gravel Co. v. U.S.</u>, 552 U.S. 130 (2008); <u>Schmidt v. Household Fin. Corp., II</u>, 661 S.E.2d 834, 839; Fed. R. Civ. P. 8(c)(1), it would be illogical to read facts that FXG has not even pled in connection with Plaintiff's Sixth Amended Complaint into that complaint in order to grant FXG's motion to dismiss.[9] In the

---

[8] FXG has not answered Plaintiffs' Sixth Amended Complaint. Instead, it filed the instant motions. The Court will not construe FXG's Answer to the Fifth Amended Complaint as responsive to the Sixth Amended Complaint because the Court directed FXG to "advise the Court in writing [if] it intends to rely on pleadings already filed" in response to Plaintiffs Sixth Amended Complaint. ECF No. 287. FXG has not advised the Court of its intent to rely on the Answer to the Fifth Amended Complaint, and the instant motions suggest the opposite intent.

[9] FXG has also provided these dates as an attachment to the Declaration of Robert W. McFarland. ECF No. 296 attach. 1. The Court will not consider this evidence for two reasons. First, the

absence of dates identifying when Plaintiffs entered into their contracts with FXG, discovered the purported fraud, and terminated their contracts with FXG, the Court cannot determine when their fraud claims accrued, whether Plaintiffs acted with promptness to rescind the contracts, or whether they received an offending paycheck within the FLSA's statute of limitations.

It is unclear from the face of Plaintiffs' Sixth Amended Complaint that their fraud, rescission, and FLSA overtime claims are untimely. Accordingly, the Court RECOMMENDS denying FXG's 12(b)(6) Motion to Dismiss to the extent it asks the Court to dismiss these claims as untimely. It further RECOMMENDS that Plaintiffs be directed to file a Seventh Amended Complaint that comports with Rule 9(b) of the Federal Rules of Civil Procedure and the standards outlined herein.[10]

---

declaration was filed in support of FXG's Motion to Dismiss or Sever and Transfer rather than FXG's 12(b)(6) Motion to Dismiss. Second, considering the declaration in connection with FXG's 12(b)(6) Motion to Disimss would require the Court to convert the 12(b)(6) motion into a motion for summary judgment, and the Court declines to exercise its discretion in this manner.

[10] FXG does not argue that Plaintiffs have failed to plead a claim for fraud, but the Court expresses serious reservations about Plaintiffs' ability to do so based on their allegations in the Sixth Amended Complaint. To make out a fraud claim under Virginia law, a plaintiff must prove that (1) the defendant made "a false representation; (2) of a material fact; (3) intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled." Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994). Plaintiffs' central argument is that FXG intentionally misrepresented, through pre-contractual statements and the OA, that Plaintiffs would be "independent contractors" when, in fact, FXG

### B. **Whether Plaintiffs Have Stated a Claim for Rescission**

In their Second Cause of Action, Plaintiffs' seek recession of the OA, arguing that it is unenforceable because it is void as against public policy and as an unconscionable contract of adhesion. ECF No. 288 ¶¶ 83, 85. They claim FXG was unjustly enriched by the OA that misclassified Plaintiffs as independent contractors, and they seek the quantum meruit value of their services as employees. Id. ¶¶ 87-91. In addition to arguing that Plaintiffs' rescission claim is untimely, FXG argues that the claim fails as a matter of law because Plaintiffs have not alleged that they are able to restore to FXG the compensation and benefits that they received under the OA. ECF No. 291 at 15.

A court granting rescission must be able to substantially restore the parties to the positions they occupied before they

---

intended to treat and did treat Plaintiffs as employees. What constitutes and independent contractor is a question of law. Intermodal Servs., Inc. v. Smith, 364 S.E.2d 221, 224 (Va. 1998) ("What constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact.") (quoting Baker v. Nussman, 147 S.E. 246, 249 (1929)). Other than representing that Plaintiffs would be independent contractors, the Sixth Amended Complaint does not identify any false pre-contractual or contractual statements that FXG made. Because FXG's assertion that Plaintiffs were independent contractors is a statement of law rather than fact, it is difficult to see how Plaintiffs intend to establish that FXG made a false representations of material fact. See Debnam v. FedEx Home Delivery, 2011 WL 1188437, at *2 (D. Mass. Mar. 31, 2011) (dismissing former FXG driver's fraud claim because "[t]he characterization of the relationship [in the OA] is not a statement of 'fact' but rather an assertion of a legal conclusion," which is "not properly the basis of a claim for factual misstatement").

-13-

entered into the contract. Schmidt, 661 S.E.2d at 837 (quoting Bonsal v. Camp, 69 S.E. 978, 979 (Va. 1911)). FXG argues that because Plaintiffs have not offered to and, in fact, cannot, return the benefits received under the OA, their rescission claim fails as a matter of law. See Saunders v. Gen. Servs. Corp., 659 F. Supp. 1042, 1057 (E.D. Va. 1987) ([B]efore rescission may be granted . . . the party desiring to rescind must act with due diligence in claiming fraud once it has been discovered [and] . . . must restore any monies received under the contract in order to place the parties in status quo.").

FXG cites Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834 (2008), in support of its position. In that case, the Virginia Supreme Court considered whether the plaintiff stated a claim for rescission. The plaintiff had entered into a mortgage loan and prepaid a finance charge. Id. at 835. The plaintiff stopped making payments on the loan when he discovered that the loan agreement was fraudulent. Id. at 837. When the mortgagor commenced foreclosure proceedings, the plaintiff sold the house and repaid the balance on the loan. Id. at 837–38. The Virginia Supreme Court held that the plaintiff failed to state a claim for rescission because no contract existed between the plaintiff and the defendant. Id. at 838. Rather, the contract in question was between the plaintiff and an unnamed third-party. Id. The Court also observed that the circuit court could not have restored the parties to their

-14-

respective pre-contract positions because the plaintiff had sold the house and repaid the loan. <u>Id.</u>

Although <u>Schmidt</u> suggests that rescission is not available when parties engage in post-contractual transactions that the court cannot unwind, Virginia courts also recognize that, actual restoration is not required. Rather "[r]estoration that is reasonably possible and demanded by the equities of the case is enough." <u>Edmunds v. Chandler</u>, 127 S.E.2d 73, 78 (Va. 1962). Specifically, in <u>Millboro Lumber Company v. Augusta Wood Products Corporation</u>, 125 S.E. 306 (Va. 1924), the Virginia Supreme Court upheld an award of damages for a plaintiff seeking rescission. The court explained that

> [i]t is true as contended, generally speaking, that the court must be able substantially to restore the parties to the position they occupied before entering into the contract, but, where, on account of the act of the adverse party, complete restitution cannot be had, rescission will not be denied, and the court will, so far as practicable, require the party profiting by the fraud to surrender the benefit he has received in the transaction.

<u>Id.</u> at 310. The Court's observation concerning the specific facts in <u>Schmidt</u> does not controvert the principle expressed in <u>Millboro Lumber</u>. Interpreting Virginia law on rescission in <u>Saunders v. General Services Corporation</u>, a district court in the Eastern District of Virginia held that restoration could be accomplished by offsetting the amount plaintiff received from defendant in consideration for the contract against any damages plaintiff was

-15-

entitled to receive from defendant. 659 F. Supp. at 1957; see also Newton v. Newton, 101 S.E.2d 580, 584 (Va. 1958) ("A vendor who seeks to cancel his contract, particularly where the ground is the wrong of the vendee, is entitled to deduct from the consideration paid to him any financial loss sustained by him by reason of the contract and the amount of the financial benefit received by the vendee during his possession under the contract."). These authorities indicate that equitable considerations guide courts' determinations of whether rescission is a proper remedy.

FXG urges the Court to adopt the reasoning of the district courts in Currithers v. FedEx Ground Package Sys., Inc., No. 1:04-cv-10055 (E.D. Mich., Feb. 9, 2012), ECF No. 301 attach. 1, and Carlson v. FedEx Ground Package Sys., Inc., No. 05-cv-85-BU (D. Mt., Dec. 21, 2011), ECF No. 291 attach. 1 at 23, which both rejected FedEx drivers' claims for rescission because the plaintiffs had not offered to restore the benefits received under the OA. The Court declines this invitation because the court in Currithers arrived at its decision interpreting Michigan law on a motion for summary judgment, ECF No. 301 attach. 1 at 1, and the court in Carlson was interpreting a Montana statutory provision providing the elements of rescission, ECF No. 291 attach. 1 at 21. These cases are therefore clearly distinguishable from the instant action both procedurally and substantively.

Although rescission may not be an appropriate remedy upon further examination of the facts, it appears from the allegations in the Sixth Amended Complaint that the Court could achieve equitable restoration by offsetting the benefits Plaintiffs gained under the OA against any amounts owed to them as a consequence of being misclassified as independent contractors. Accordingly, the fact that the Plaintiffs cannot and have not offered to repay amounts received from FXG under the OA, does not warrant dismissal of their rescission claim in count two.

C. **Whether Plaintiffs have stated an FLSA Minimum Wage Claim**

Plaintiffs' complaint alleges that "each Plaintiff worked hours for which they were never paid, in the loading and unloading of vehicles" and that FXG's failure to pay wages for these hours violated the FLSA. ECF No 288 ¶¶ 97-98. Section 206 of the FLSA provides the minimum wage that employers must pay employees. 29 U.S.C. § 206(a). Section 216(b) permits a private cause of action against an employer who violates the provisions of § 206 and states that employers shall be liable to their employees for "unpaid minimum wages." 29 U.S.C. § 216(b). FXG contends that the Sixth Amended Complaint fails to state a claim for unpaid minimum wages because it merely alleges non-payment for hours worked rather than alleging that FXG failed to compensate Plaintiffs at the minimum rate for every hour worked in a given week.

The Fourth Circuit has determined that the workweek, as opposed to a given day, "constitute[s] the period of time over which wages should be measured to determine whether the employer was in compliance with the minimum wage provisions and that there [is] no statutory violation so long as 'each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate.'" Blakenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1197 (4th Cir. 1969) (quoting United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2d Cir. 1960)). In other words, an employer's failure to pay an employee for each hour worked is not a violation of § 206.   Rather, an employer violates the FLSA only when an employee's compensation for the week falls below the statutory minimum when that minimum is multiplied by the number of hours the employee worked. Applying this rule, the District Court of Maryland recently dismissed an FLSA minimum wage claim stating, "Plaintiffs have alleged that they were unpaid for certain hours that they worked, but have not alleged that they were not paid the statutory minimum wage for each of the total number of hours they worked." Avery v. Chariots for Hire, 748 F. Supp. 2d 492, 501 (D. Md. 2010).

Plaintiffs claim for failure to pay minimum wages in the Sixth Amended Complaint suffers the same infirmity as the complaint in Chariots for Hire.   Recent Supreme Court precedent makes clear that

-18-

a complaint must state sufficient facts from which the Court can infer the plausibility rather than the mere possibility that the defendant is liable for the alleged misconduct. See Iqbal, 129 S. Ct. at 1949; see also Coleman, 626 F.3d at 190; Francis, 588 F.3d at 193.  Although it is possible that FXG failed to compensate Plaintiffs in accordance with the statutory minimum by failing to pay them for every hour worked, Plaintiffs have not alleged any facts that move this possibility into the realm of plausibility. Accordingly, the Court RECOMMENDS that Defendant's 12(b)(6) Motion to Dismiss be GRANTED as to Plaintiffs' FLSA minimum wage claim.

### D.   **Whether Plaintiffs Have Stated a Claim for Declaratory Relief**

Plaintiffs' Fourth Cause of Action is for "a declaratory judgment in their favor which declares Defendant's practices as heretofore alleged to be unlawful and which provides for recovery of all sums determined by this Court to be owed by Defendant, and each of them, to the Plaintiffs." ECF No. 288 ¶ 103. Plaintiffs do not specify whether they seek declaratory relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 or Virginia's declaratory judgment statute, Va. Code § 8.01-184. The Court treats the claim as one for declaratory relief under the federal Declaratory Judgment Act ("DJA") because "[o]nce removed, an action originally filed under Virginia Code § 8.01-184 is treated by the federal court as though it had been filed under 28 U.S.C. § 2201."

-19-

Chapman v. Clarendon Nat'l Ins. Co., 299 F. Supp. 2d 559, 563 (E.D. Va. 2004).

Defendant argues that Plaintiffs have failed to state a claim for declaratory judgment because relief under the DJA is meant to be prospective and determinative of future conduct, but Plaintiffs seek relief on rights that have already matured based on allegedly wrongful past conduct. ECF No. 291 at 26. Plaintiffs argue a present controversy exits between them and FXG concerning the validity of the OA and unpaid wages that is appropriate for declaratory relief. ECF No. 298 at 23-24.

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Noting the permissive terminology of this section, the Supreme Court has observed that the DJA "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Nevertheless, a district court may only decline to exercise jurisdiction over a DJA for good reason. Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994).

One factor district courts consider in determining whether to entertain a claim under the DJA is the purpose of the Act. Hipage

Co., Inc., v. Access2Go, Inc., 589 F. Supp. 2d 602, 615 (E.D. Va. 2008). Although Plaintiffs are correct that a controversy exists between them and defendants, "[t]he purpose of the DJA is to 'allow[] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings.'" Hipage Co., Inc., 589 F. Supp. 2d at 615 (quoting United Capitol Ins. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998)). In other words, declaratory judgment "is appropriate when the judgment will serve a useful purpose of clarifying and settling the legal relations in issue, and when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding," Penn Am. Ins. Co. v. Coffey, 368, F.3d 409, 412 (4th Cir. 2004), but not where questionable conduct has already occurred, damages have already accrued, and a suit has already been instituted, see Tapia v. U.S. Bank, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998) ("The remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages . . . . It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty."). Because Plaintiffs' rights to damages have already accrued to the extent that the conduct of which they complain has already occurred, relief under the DJA is

-21-

not appropriate. Accordingly, the Court RECOMMENDS that Defendant's motion to dismiss Plaintiffs' claim for declaratory judgment be GRANTED. See Debnam v. FedEx Home Delivery, No. 10-11025-GAO, 2011 WL 1188437 (D. Mass. March 31, 2011) (dismissing former FedEx driver's claim for declaratory judgment where "declaratory relief would add nothing to the coercive claim that plaintiff has made"). For the foregoing reasons, the Court RECOMMENDS that Defendant's 12(b)(6) Motion to Dismiss be DENIED as to Plaintiffs' fraud, rescission, and FLSA overtime claims and GRANTED as to Plaintiffs' FLSA minimum wage claim and claim for declaratory relief. The Court further RECOMMENDS that Plaintiffs be directed to file a seventh amended complaint that comports with Rule 9(b).

### III. FXG'S MOTION TO STRIKE PLAINTIFFS' FLSA CLAIMS

As an alternative to dismissing Plaintiff's FLSA claims under Rule 12(b)(6), FXG argues that the Court should strike their FLSA claims under Rule 12(f) because "Plaintiffs did not have leave of Court or permission from FXG to add their FLSA claims to this new amended complaint." ECF No. 291 at 2. Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Plaintiffs' FLSA claims do not run afoul of rule 12(f). In its November 21, 2011 Order, the Court directed Plaintiffs to file a Sixth Amended Complaint setting forth all the causes of action that

-22-

they intended to plead. ECF No. 287. Although the Order states that Plaintiffs' Fifth Amended Complaint "does not appear to contain any federal claims," it does not in any way limit the causes of action Plaintiffs could include in their Sixth Amended Complaint. Accordingly, the Court RECOMMENDS that FXG's motion to strike Plaintiffs' FLSA claims be DENIED.

## IV. MOTION TO DISMISS OR SEVER AND TRANSFER

In the instant action, the non-Norfolk Plaintiffs joined this suit when it was part of the MDL proceedings.[11] The MDL proceedings were instituted with the specific purpose of coordinating discovery among hundreds of FXG drivers with claims similar to Plaintiffs'. Now that the action has been remanded back to this Court, FXG argues that dismissing or severing and transferring the claims of the non-Norfolk Plaintiffs is proper. Specifically, FXG asks the Court to drop all non-Norfolk Plaintiffs from the action, or, alternatively, to sever Plaintiffs' claims and transfer the non-Norfolk Plaintiffs' claims to the federal districts and divisions in which those plaintiffs worked. Having recommended that Plaintiffs be directed to file a seventh amended complaint, FXG's Motion to Dismiss or Sever and Transfer requires the Court to determine whether Plaintiffs should also be permitted to prosecute their remaining claims in one action before this Court or required to proceed individually elsewhere.

---

[11] The non-Norfolk Plaintiffs are all plaintiffs except Gregory.

## A. <u>Whether Dismissal or Severance is Proper</u>

Rule 21 of the Federal Rules of Civil Procedure is entitled Misjoinder and Nonjoinder of Parties. Pursuant to Rule 21, a court "may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Although Rule 21 does not identify when severing claims or dropping parties is appropriate, parties are considered misjoined when they fail to satisfy the standard for permissive joinder in Rule 20. <u>Hanna v. Gravett</u>, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003). Plaintiffs joined under Rule 20 must satisfy two conditions: they must assert a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences," and a "question of law or fact common to all of them [must] arise in the action." Fed. R. Civ. P. 20. Although guiding principles exist, whether parties are properly joined under Rule 20 requires a case-by-case inquiry. <u>Saval v. BL, Ltd.</u>, 710 F.2d 1027, 1031 (4th Cir. 1983).

Courts also use Rule 21 to sever and drop claims or parties based on "considerations of fundamental fairness, judicial economy, prejudice, undue delay, as well as the dual threat of duplicitous litigation and inconsistent verdicts." <u>John S. Clark Co., Inc., v. Travelers Indem. Co. of Ill.</u>, 359 F. Supp. 2d 429, 441 (M.D.N.C. 2004); <u>see, e.g.</u>, <u>Rice v. Sunrise Express, Inc.</u>, 209 F.3d 1008, 1016 (7th Cir. 2000) (affirming district court's severance of claim against one corporate defendant because it was capable of

proceeding as a discrete and separate action); C.L. Ritter Lumber Co. v. Consolidation Coal. Co., 283 F.3d 226, 229-230 (4th Cir. 2002) (affirming district court's post judgment severance of claims to preserve diversity jurisdiction); Tardd v. Brookhaven Nat'l Lab., No. 04 CV 3262, 2007 WL 1423642, at *6 (E.D.N.Y. May 8, 2007) (considering whether severance will prevent prejudice to parties and whether different witnesses and documentary proof are required for different claims in addition to the standards for permissive joinder); Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div'n, 204 F. Supp. 139, 141 (D.C.S.C. 1962) (noting that even where venue is proper as to all claims a court may nevertheless sever and transfer some of them to promote convenience). Specific considerations include "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted." German by German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995). Together, Rules 20 and 21 provide district courts broad discretion to structure cases in a manner that promotes fairness to the parties, trial convenience, and the efficient administration of justice. See id.; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) ("Under the

[Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged); Saval, 710 F.2d at 1031-32 (4th Cir. 1983) ("[R]ule 20 should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits"); Matthew Bender Moore's Federal Practice § 21.05 (3d ed. 2011) ("Rule 21 gives the court tools to jettison those parties and claims that are not within its jurisdiction or that are not conveniently prosecuted together, preserving parties and claims that are properly before it.").

Although common issues of law pervade Plaintiffs' complaint, the factual dissimilarities are myriad, and the Court is reluctant to conclude that Plaintiffs claims arose out of the same transaction or occurrence or series of transactions or occurrences for every plaintiff. Even if a company-wide policy to fraudulently classify FXG drivers as independent contractors and deprive them of overtime wages in violation of the FLSA exists, little in the way of judicial economy will be gained by allowing plaintiffs to proceed jointly, whereas prejudice to FXG will likely result. Accordingly, severance of Plaintiffs' claims is proper.[12]

---

[12] Although Rule 21 authorizes dropping parties, courts must exercise this option "on just terms." Fed. R. Civ. P. 21. Dropping a party dismisses the party from the case without prejudice, John S. Clark Co., Inc., 359 F. Supp. 2d at 437, but prejudice may

The Fourth Circuit has recognized that Rule 20's "transaction or occurrence" test permits "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." Saval, 710 F.2d at 1031 (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974)). "Absolute identity of all events is unnecessary," and courts should construe Rule 20 to promote trial convenience and prevent multiple lawsuits. Id. Nevertheless, courts are reluctant to find reasonable relatedness where plaintiffs allege similar harms committed by different actors, at different times, and in different places. See, e.g., Saval, 710 F.2d at 1032 (where "cars were purchased at different times, were driven differently, and had different service histories" the district court did not abuse its discretion "in

result if the applicable statute of limitations bars the dropped party from re-filing a timely claim, see Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2000) ("[T]he district court is duty-bound to prevent [statute of limitations] consequences by severing rather than dismissing claims."); DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006) (holding that district court abused its discretion in dropping a party rather than severing its claim where statute of limitations prevented party from re-filing). FXG argues that Virginia's tolling provision, Va. Code. § 80.-229, prevents any prejudice that might arise from the statute of limitations running on Plaintiffs' claims. See Welding, Inc. v. Bland Cnty. Serv. Auth., 541 S.E.2d 909, 911-12 (2001) (applying Va. Code § 801-229(E)(1) to toll the statute of limitations while plaintiff's suit was pending in an improper venue from which it was dismissed without prejudice). The Court finds this argument unpersuasive. Although Virginia's tolling provision may toll the statute of limitations on Plaintiffs' state-law fraud claims, FXG has failed to argue that it is equally applicable to Plaintiffs' federal FLSA claims. Accordingly, severing the claims of the non-Norfolk plaintiffs, rather than dropping them as parties, is the most judicious course.

-27-

determining that the allegedly similar [automotive] problems did not satisfy the transaction or occurrence test."); Bailey v. N. Trust Co., 196 F.R.D. 513, 516 (N.D. Ill. 2000) (severing the claims of five employees who worked in same department but experienced discrimination from different team leaders and section managers at different times over a fifteen month period); Smith v. N. Am. Rockwell Corp., Tulsa Div'n, 50 F.R.D. 515 (N.D. Okl. 1970) (denying joinder where plaintiffs alleged discriminatory policy because discrimination occurred at different times and was allegedly committed by different actors).

It is clear from the Sixth Amended Complaint that all plaintiffs performed services for FXG in the state of Virginia; however, Plaintiff Gregory worked at FXG's terminal in Norfolk whereas Plaintiffs Taylor, Howell, and Jackson worked out of Fredericksburg; Plaintiffs Bowman, Pryor, and Willis worked out of Richmond; and Plaintiffs Perdue, Powell, and Wittmeier worked out of Roanoke. ECF No. 296 attach. 1. Although the Plaintiffs executed substantially identical OAs, they did so at different times and in different locations. ECF No. 296 attach 1. Moreover, once Plaintiffs began working, plaintiffs at different terminals were under the direction of different managers. Id.

Plaintiffs acknowledge these differences, but attempt to minimize them by arguing that their claims arise out of a "standard Operating Agreement, as well as FedEx Ground's nationally

-28-

centralized practices and procedures that are systematically applicable" to all Virginia drivers. ECF No. 300 at 4. They essentially argue that the Court should ignore the different circumstances under which each driver contracted with and worked for FXG because all drivers signed similar OAs and were subject to the same policies while employed.

Plaintiffs find support for their argument in <u>Hinson v. Norwest Fin. S.C., Inc.</u>, 239 F.3d 611 (4th Cir. 2001). In <u>Hinson</u>, the Fourth Circuit considered whether a district court abused its discretion in granting a motion to amend a complaint where the original plaintiffs sought to add seven new plaintiffs who had engaged in the same kind of transaction involving similar loans during which the defendant had made allegedly similar misrepresentations. <u>Hinson</u>, 239 F.3d at 618. The district court did not consider Rule 20's joinder provisions in granting the amendment, but the Fourth Circuit held that adding the parties was not an abuse of discretion even when Rule 20's provisions were applied to the facts of the case. <u>Id.</u> The Panel distinguished <u>Saval v. BL Ltd.</u>, 710 F.2d 1027 (4th Cir. 1983), in which the Fourth Circuit upheld a district court's decision to deny joinder, stating that "the plaintiffs' factual histories [in <u>Saval</u>] were so dissimilar from each other that their claims might have required severance for trial." <u>Id.</u> at 618.

-29-

The Court recognizes that joinder may be proper where a defendant's pattern or practice causes numerous plaintiffs similar harm; see, e.g., Mosley, 497 F.2d at 1333-34 (holding that district court abused its discretion by severing discrimination claims of employees who alleged a company-wide policy of discriminatory treatment)Hohlbein v. Heritage Mutual Ins. Co., 106 F.R.D. 73, 78-79 (E.D. Wisc. 1985) (denying defendant's motion to sever four plaintiffs' fraud claims); King v. Ralston Purina Co., 97 F.R.D. 477, 480-81 (W.D.N.C. 1983) (allowing three plaintiffs to join discrimination claims against single defendant where plaintiffs alleged company-wide policy of discrimination); however, as in Saval, the factual nuances of each plaintiff's claims favor individualized treatment.

The predicate question common to all Plaintiffs is whether they were employees rather than independent contractors. This question is generally one of fact and dependent on the "individual circumstances of each case." Atkinson v. Sachno, 541 S.E.2d 902, 905 (Va. 2001) (quoting Texas Co. v. Zeigler, 14 S.E.2d 704, 707 (Va. 1941)). Plaintiffs argue that the OA and standardized company-wide policies dictated their treatment. This may be the case, but Virginia courts recognize that

> [i]t is only by consideration of all the facts pertaining
> to the relationship in any case, including the provisions
> of the contract, the actual conduct of the parties, and
> the conditions of the business in which they are engaged,
> that it can be determined whether the [individual] is

> endowed with that control over his own methods and means
> of doing the work which is the test of an independent
> contractor.

Id. at 906 (emphasis added) (quoting Texas Co., 14 S.E.2d at 708).[13]

Accordingly, this case requires the fact-finder to examine the way
in which FedEx managers treated ten different employees at four
different terminals before reaching the question of whether any of
FXG's conduct was wrongful. Cf. Acevedo v. Allsup's Conveniences
Stores, Inc., 600 F.3d 516, 522 (5th Cir. 2010) (affirming district
court's severance order where plaintiffs alleged that employer's
compensation policy violated the FLSA but plaintiffs worked at 300
stores across the country and each store had a different manager
responsible for implementing the policy).

In examining the alleged wrongful conduct, the fact-finder
will again be required to analyze the intricacies of each
plaintiff's dealings and relationship with FXG. In order to prevail

---

[13] The control inquiry focuses on the right of control rather than
the exercise of control. Smith v. Grenadier, 127 S.E.2d 107, 111
(Va. 1962). Nevertheless, whether the right of control exists
requires an analysis of the relationship between each plaintiff and
FXG. See id. ("Right of control 'may be inferred from various
evidentiary facts.'") (quoting Barber v. Textile Machine Works, 17
S.E.2d 359, 361 (Va. 1941)). Although some of the evidence involved
in this inquiry will certainly be the same for each plaintiff, this
Court agrees with the MDL court's holding that "[w]hile a
determination of employment status could be made solely on the
basis of the standard Operating Agreement, Virginia law requires a
driver-by-driver examination in light of the circumstances of the
particular case . . . . Under the Virginia standard, FedEx Ground
must be allowed to present evidence of who sets the drivers'
schedules, ownership of equipment, and so on, which may necessitate
the use of extrinsic evidence." In re FedEx Ground Package Sys.,
Inc., Emp't Practice Litig., 273 F.R.D. 242, 487 (N.D. Ind. 2008).

on their fraud claims, each plaintiff will have to prove that FXG

(1) made "a false representation; (2) of a material fact; (3)

intentionally and knowingly; (4) with intent to mislead; (5)

reliance by the party misled; and (6) resulting damage to the party

misled." Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390

(Va. 1994). Although proof of elements one through four and six

will likely be similar for each plaintiff, whether each plaintiff's

reliance was justifiable will depend on individual circumstances.

See Metrocall of Del., Inc. v. Continental Cellular Corp., 437

S.E.2d 189, 193-94 (Va. 1993) ("But to establish fraud, it is

essential that the defrauded party demonstrates the right to

reasonably rely upon the misrepresentation."); Miller v. Premier

Corp., 608 F.2d 973, 982 (4th Cir. 1979) ("[I]ssues of reliance and

its reasonableness, going as they do to the subjective states of

mind and applications of objective standards of reasonableness, are

preeminently factual issues for the trier of fact."). Moreover, FXG

has already raised timeliness issues as to Plaintiffs' fraud and

rescission claims. ECF No. 291. Accordingly, when each plaintiff

should have discovered the alleged fraud and whether each plaintiff

acted promptly to rescind the OA is also at issue. See Va. Code §

8.01-249(1) (providing that actions for fraud accrue "when the

fraud is discovered or by the exercise of due diligence reasonably

should have been discovered . . . ."); McLeskey, 405 S.E.2d at 848

(explaining that a party who fails to take prompt action after

-32-

learning of facts constituting grounds for rescission waives his right to rescind the contract).

Similar concerns weigh against joint consideration of Plaintffs' FLSA overtime claims. Plaintiffs worked for FXG at different times and in geographically separate locations, so the Court has difficulty grasping how their individual overtime claims meet the "same occurrence or transaction" test.[14] See Acevedo, 600 F.3d at 522 (recognizing that joining the FLSA claims of twenty-two security guards who all worked at a single location during a discrete period as proper, but distinguishing it from a case where plaintiffs alleged violations at different locations and over different periods of time). Again, the Court recognizes Plaintiffs' contention that FXG committed the alleged FLSA violations as part of a pattern or practice of not logging their hours; however, plaintiffs will have to put forth individualized proof that they worked hours for which they did not receive compensation. See McLaughlin v. Murphy, 436 F. Supp. 2d 732, 737 (D. Md. 2005) (explaining parties' burdens for proving FLSA violations). Moreover, FXG plans to argue that at least some of the plaintiffs fall into the Motor Carrier Act exemption, EFC No. 295 at 13, which exempts certain motor vehicle operators from the FLSA's overtime requirements. See 29 U.S.C. § 213(b)(1), 29 C.F.R. § 782.2(a), (e).

---

[14] Plaintiffs' do not contend that their FLSA claims should be treated as a collective action under 29 U.S.C. § 216(b).

Proving the exemption will require FXG to put on evidence of the dates individual plaintiffs drove for FXG and the weights of the trucks they operated.[15] See 29 U.S.C. § 207(c) (providing that a covered employee under the FLSA is an individual employed as a motor carrier, as defined in 49 U.S.C. § 13102, who drives a vehicle weighing 10,000 pounds or less).

FXG has also provided a list of thirty-eight witnesses it plans to call at trial. ECF No. 296 attach. 2. It appears that any given witness can provide testimony for, at most, three plaintiffs. ECF NO. 296 attach. 2. The differing evidence that FXG plans to present for different plaintiffs warrants separate trials to prevent jury confusion. See Hinson, 239 F.3d at 618 (recognizing that severance may be proper when factual dissimilarities of claims will require separate trials); Henderson v. AT & T Corp., 918 F.Supp. 1059, 1063 (S.D. Tex. 1996) (granting motion to sever where trying twenty claims of five plaintiffs together "would be extraordinarily confusing for the jury,"); CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc., 896 F. Supp. 505, 506-07 (D. Md. 1995) (severing patent claims to prevent jury confusion where, among other things, the jury would have to consider separate affirmative defenses). In light of the discrete relationship that

---

[15] Amendments to the MCA in 2005 and 2008 placed operators of motor vehicles under 10,000 lbs within the purview of the FLSA's provisions. See SAFETEA-LU, Pub. L. No. 109-59 § 4142, 119 Stat. 1144 (2005); SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306, 122 Stat. 1572 (2008).

FXG formed with each Plaintiff, the geographic diversity among groups of plaintiffs, and the desire to avoid jury confusion severance of their claims is proper. The factual particulars of each plaintiff's relationship with FXG assuages concerns that inconsistent verdicts might result.

The Court recognizes that it could allow Plaintiffs to remain joined and order separate trials under Rule 42 to "avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Yet, severance accomplishes more than separate trials. Severed claims become entirely independent actions upon which a court may enter final, appealable orders. See Chrysler Credit Corp. v. Cnty. Chrysler, Inc., 928 F.2d 1509, 1519 n. 8 (10th Cir. 1991). Plaintiffs argue that all claims should remain joined so that discovery may proceed in a coordinated manner as it did in the MDL. ECF No. 300 at 26. First, substantial discovery was conducted in the MDL for Plaintiffs Gregory, Taylor, and Howell. ECF No. 300 at 25-26. Second, there is no reason severing Plaintiffs claims should interfere with coordinated discovery. The parties remain free to coordinate discovery requests and depositions as they see appropriate, and apply to the Court for relief as circumstances require. Severance assures that to the extent discovery disputes arise in the context of individual plaintiffs, they can be resolved without delaying proceedings for the remaining plaintiffs. Requiring Plaintiffs to proceed independently at this stage in the

litigation will allow the parties to better articulate their individualized claims and defenses, which will ultimately foster swifter resolution for all involved. See Acevedo, 600 F.3d at 522 (concluding that district court was within its discretion to sever employees' claims where joinder would be logistically challenging and there were different defenses applicable to each plaintiff's claims). Should it become necessary or expedient after further development of the facts and the parties' arguments to hold joint hearings on common matters, the Court may fashion an order to that effect. See Fed. R. Civ. P. 42(a).

### B. Whether to Transfer the Claims of the Non-Norfolk Plaintiffs

FXG does not contest the propriety of laying venue in the Norfolk Division of the Eastern District. It nevertheless asks the Court to transfer the Fredericksburg Plaintiffs to the Alexandria Division of the Eastern District of Virginia, the Richmond Plaintiffs to the Richmond Division of the Eastern District of Virginia and the Roanoke Plaintiffs to the Western District of Virginia for the purpose of witness convenience.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404. Whether to transfer an action lies in the sound discretion of the district court and requires it

to determine, first, whether the claims might have been properly brought in the proposed forum, and second, whether considerations such as the plaintiff's choice of forum, convenience of the parties, witness convenience and access, and the interests of justice favor transfer. See Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 994 (E.D. Va. 2011); Heinz Kettler GMBH & Co., KG v. Razor USA, LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010). As the moving party, FXG carriers the burden of proving that the circumstances of the case weigh strongly in the favor of transfer. Heinz Kettler GMBH & Co., 750 F. Supp. 2d at 667.

Plaintiffs could have brought their claims in the forums FXG proposes. 28 U.S.C. § 1391 governs venue for actions brought in federal court. It provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391 (b)(2). For all the plaintiffs, a substantial part of the events giving rise to their claims occurred at and around the FXG terminal to which they were assigned. Accordingly, the Roanoke plaintiffs could have brought their claims in the Western District of Virginia and the Fredericksburg and Richmond plaintiffs could have brought their claims in the Alexandria and Richmond divisions of the Eastern District of Virginia, respectively. 28 U.S.C. § 1391; Local Civ. R. 3(C).

Although venue may be proper in the proposed forums, FXG has not shown that circumstances weigh strongly in favor of transfer. Plaintiffs' choice of forum is not a significant factor in this case because the non-Norfolk plaintiffs have virtually no connection to Norfolk. See Pragmatus AV, LLC, 769 F. Supp. 2d at 995 (giving plaintiff's choice of forum minimal weight because its connection to the Eastern District of Virginia was weak). Convenience to the parties weighs slightly against transfer to the extent that Plaintiffs' counsel will likely pass on any costs associated with managing cases in separate localities to their clients.[16] See Convergence Techs. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 644 (E.D. Va. 2010) (explaining that financial status of parties is appropriate consideration in transfer calculus). The most salient issues the Court must weigh are witness convenience the interests of justice.

The only issue on which FXG has provided evidence is witness convenience. FXG argues that the witnesses it plans to call for the non-Norfolk Plaintiffs at trial will be significantly burdened if

---

[16] Plaintiffs' contend that they would be burdened by having to identify local counsel if the Court transferred their actions. ECF No. 300 at 28. They are mistaken. Attorneys admitted in the Eastern District of Virginia may practice in all its divisions, E.D. Va. Local R. 83.1, and they may practice in the Western District of Virginia "upon the filing of a certificate of good standing from the Clerk of the Eastern District of Virginia showing that the attorney has been duly admitted to practice in that district," W.D. Va. Local R. 6(c). Accordingly, Plaintiffs could retain the benefit of present counsel if the Court transferred their cases.

they have to travel to Norfolk to participate in the action. "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003). FXG has attached the residences of proposed witnesses to the Declaration of Robert McFarland, Esq. ECF No. 296 attach. 2. Thirty-three of FXG's thirty-eight proposed witnesses live in Virginia. ECF No. 296 attach. 2. Twenty-five of them live in the Eastern District of Virginia, but twenty-six of them live outside the Norfolk division. Id. All the Virginia witnesses are within the Court's subpoena power. Fed. R. Civ. P. 45(b)(2)(C). It is clear from the evidence submitted that a significant number of FXG's proposed witnesses will have to travel across the state should Plaintiffs' claims proceed to trial. However, the Court cannot accurately gauge the true the number of witnesses likely to be inconvenienced or the effect this inconvenience might have on FXG's ability to present its defenses because the evidence submitted gives no indication of the materiality of the witnesses' testimony.

Moreover, FXG has not argued that any judicial interests will be served by transferring the non-Norfolk plaintiffs to the respective proposed forums. Interest of justice considerations typically include, "the pendency of a related action; the court's

familiarity with the applicable law; docket considerations; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment." Pragmatus AV, LLC, 769 F. Supp. 2d at 991. Of the proposed forums, this Court is the most familiar with the parties and their histories. This case originated in this Court roughly nine years ago, and the issues the non-Norfolk plaintiffs raise are substantially similar to those raised in the complaints that Gregory filed between 2003 and 2005. Transferring the claims of the non-Norfolk plaintiffs will only prolong resolution of Plaintiffs' claims as new judges acquaint themselves with the parties' claims and defenses. Moreover, to the extent that Plaintiffs' claims are related, this Court can promote judicial efficiency and reduce the risk of duplicative litigation by facilitating coordinated discovery, hearings, and trials. Although witnesses may have to travel from Western and Northern Virginia to Southeastern Virginia should the parties proceed to trial, the interests of justice outweigh witness convenience in this case.[17] FXG has failed to demonstrate that the circumstances strongly favor transferring the

---

[17] Because an action may be tried in any division within a judicial district, Crumrine v. NEG Micon USA, Inc., 104 F.Supp.2d 1123, 1126 (N.D. Iowa 2000); Alabakis v. Iridium Holdings, LLC, 2007 WL 3245060, Civil Action No. DKC 2007-2032, at *1 (D. Md. Nov. 1, 2007) Fed. R. Civ. P. 77(b), the Court finds FXG's argument that witnesses for the Fredericksburg and Richmond plaintiffs might be inconvenienced if it does not transfer their claims less persuasive.

claims of the non-Norfolk Plaintiffs. Accordingly, the Court RECOMMENDS that FXG's Motion to Dismiss or Sever and Transfer be DENIED to the extent that it seeks to dismiss or transfer the claims of the non-Norfolk Plaintiffs and GRANTED to the extent that it seeks to sever Plaintiffs' claims.

## V.   CONCLUSION AND RECOMMENDATION

Plaintiffs have failed to state claims for declaratory relief and failure to pay minimum wages under the FLSA, but the Court cannot determine from the face of the Sixth Amended Complaint whether Plaintiffs' remaining claims are time-barred. Accordingly, the Court RECOMMENDS that FXG's 12(b)(c) Motion to Dismiss, ECF No. 290, be GRANTED as to Plaintiffs' DJA and FLSA minimum wage claims and DENIED as to Plaintiffs' fraud, rescission, and FLSA overtime claims. Because the Court's November 21, 2011 Order did not limit the scope of claims Plaintiffs' could include in their Sixth Amended Complaint, the Court RECOMMENDS that Plaintiff's Motion to Strike Plaintiff's FLSA claims, ECF No. 290, be DENIED.

To promote fairness to the parties and efficient resolution of Plaintiffs' claims, the Court RECOMMENDS that Plaintiffs' claims be severed pursuant to Rule 21 and consolidated in this Court pursuant to Rule 42. The Court further RECOMMENDS directing each Plaintiff to promptly file a separate complaint that comports with Rule 9(b) of the Federal Rules of Civil Procedure and the pleading standards outlined herein. Accordingly, the Court RECOMMENDS that FXG's

-41-

Motion to Dismiss and Sever for Misjoinder, ECF 294, be DENIED to the extent that it seeks to dismiss and transfer Plaintiffs' claims and GRANTED to the extent that it seeks to sever them.

## VI.   REVIEW PROCEDURE

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures:

1.   Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).   A party may respond to another party's objections within 14 days after being served with a copy.   Fed. R. Civ. P. 72(b)(2).

2.   A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.   Thomas v. Arn,

474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984);

<u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

May    , 2012

-43-